UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――――――――――――

TUEBOR REIT SUB LLC,

                 Plaintiff,

           -v-

NATIN PAUL,

                 Defendant.

19-CV-8540 (JPO)

OPINION AND ORDER

―――――――――――――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

Plaintiff Tuebor Reit Sub LLC ("Tuebor") brought this contract action against Defendant Natin Paul, invoking this Court's diversity jurisdiction. In its second amended complaint, Tuebor alleges that Paul has breached his duties under a full recourse loan he guaranteed and posits alternative requests for relief. (Dkt. No. 26 ("SAC").) Paul has yet to file an answer, and instead moves to dismiss for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). (Dkt. No. 10.) In the alternative, Paul moves to dismiss or stay these proceedings pursuant to the *Colorado River* abstention doctrine. (*Id.*) For the reasons that follow, Defendant Paul's motion to dismiss is denied, and his motion to stay is granted.

**I.  Background**

The Court draws its factual recitation from the second amended complaint, unless otherwise noted.

    **A.  The Parties**

Plaintiff Tuebor is a Michigan limited liability company that has its principal place of business in New York. (SAC ¶ 1.) It is the current owner of the loan that forms the basis of this dispute. (SAC ¶ 16.)

Defendant Natin Paul is a resident of Texas.  (SAC ¶ 2.)  He executed the guaranty for the loan that forms the basis of this dispute.  (SAC ¶ 11.)  Under the guaranty, Paul authorized and appointed "World Class Capital Group, LLC, 767 Fifth Avenue, 16th Floor, New York, New York, Attention: Legal Department" as his agent to accept and acknowledge service of process on his behalf.  (SAC ¶ 7.)  Paul is the "founder, president, and CEO of World Class Capital Group, LLC" ("World Class").  (Dkt. No. 19 at 6.)

### B.     The Loan and the Loan Amendments

In early 2018, Ladder Capital Finance LLC made a $64,000,000 real estate mortgage loan to Silicon Hills Campus, LLC ("Silicon Hills").  (SAC ¶ 8.)  The loan was secured by Silicon Hills's property in Austin, Texas.  (Dkt. No. 11 at 11.)  Under the Paul-executed guaranty, the occurrence of certain events triggers Paul's full recourse liability.  (SAC ¶ 12.)  These events include, *inter alia*, Silicon Hills "filing a voluntary petition . . . under the United States Bankruptcy Code" (SAC ¶ 13), as well as Silicon Hills failing to "obtain . . . prior written consent to any [t]ransfer."[1]  (SAC ¶ 14.)  The loan was subsequently assigned to Plaintiff Tuebor.  (SAC ¶ 17.)

In May 2019, Tuebor entered into an amendment to the loan with Silicon Hills, providing in relevant part that Paul "guarantees payment of the [l]oan on a recourse basis at maturity in an amount equal to $3,000,000, together with any accrued and unpaid interest."  (SAC ¶¶ 19–20.)  Thus, in the event of maturity, Paul would pay Tuebor $3,000,000 unless an event provided in the guaranty transpired, in which case Paul would be on the hook to Tuebor for the full $64,000,000, along with any additional obligations under the guaranty.  (Dkt. No 11 at 12.)  In

---

[1] In relevant part, "'[t]ransfer' is defined in the [l]oan [a]greement in broad terms sufficient to include the placement, or incurring, of any encumbrance such as a lien, including an involuntary lien, against the [p]roperty."  (SAC ¶ 27.)

July 2019, Paul reaffirmed the guaranty in a second amendment to the loan and the maturity date was set for August 30, 2019.  (SAC ¶¶ 22–23.)

### C.     The First Breach and the Texas State Court Proceeding

Tuebor alleges that Paul never made the payment of $3,000,000, plus accrued and unpaid interest, which was due once the loan reached maturity per the first and second amendments.  (SAC ¶ 33.)  Following this breach, on August 30, 2019, Tuebor brought suit against Silicon Hills in Texas state court.  (Dkt. 11 at 4.)

In its Texas state court proceeding against Silicon Hills, Tuebor sought the appointment of a receiver to take possession of Silicon Hills's Austin, Texas property as a result of Paul's failure to comply with the terms of the loan.[2]  (Dkt. 19 ¶ 3.)  Further, Tuebor sought non-judicial foreclosure of Silicon Hills's property.  (*Id.*)  The Texas state court appointed a receiver and authorized a January 7, 2020 foreclosure sale.  (Dkt. 19 ¶ 4.)  Tuebor's plan was to recoup the principal amount from Silicon Hills's assets following the foreclosure sale, and then "[a]ll that [would have] be[en] left to resolve . . . is the guaranty obligations owed to [it] by Defendant [Paul]" in the action now before this Court.  (Dkt. 19 ¶ 5.)

### D.     The Second Breach and the Instant Action

On January 7, 2020, the date the foreclosure sale was supposed to take place, Silicon Hills filed for Chapter 11 Bankruptcy.  (SAC ¶ 25.)  Because this was one of the listed conditions that triggers Paul's full recourse per the Guaranty, Tuebor alleges that Paul owes the principal amount of $64,000,000.  Alternatively, Tuebor alleges Paul's full recourse because a

---

[2] Interestingly, Tuebor states it brought the receivership action "on the promissory note executed by the underlying borrower in connection with the [l]oan" (Dkt. No. 19 at 3), but seemingly fails to mention the underlying reason for bringing the action:  Paul failed to pay the $3,000,000 at maturity that was required per the first and second loan amendments.

mechanic's lien was filed against Silicon Hills's Austin, Texas property, which falls under the loan agreement's definition of transfer, and Silicon Hills failed to obtain prior written consent, which was required before any transfer can take place.  (SAC ¶¶ 26–30.)

Tuebor seeks to recover from Paul either (a) the principal amount of $61,500,000, an exit fee in the amount of $615,000, and all other fees, costs, and interest as detailed in the loan and guaranty; or (b) the principal amount of $3,000,000, along with any accrued interest, and any other judgment against Paul for damages incurred as a result of the mechanic's lien.  (SAC at 7.)

Paul has moved to dismiss for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5) or, in the alternative, to stay or dismiss the instant action pursuant to the *Colorado River* abstention doctrine.  (Dkt. No. 10.)  Tuebor opposes the motions.  (Dkt. No. 19.)

## II. Legal Standard

### A. Rule 12(b)(5)

 "On a Rule 12(b)(5) motion to dismiss, the plaintiff bears the burden of establishing that service was sufficient."  *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010).  In assessing whether a plaintiff has established proper service, a court "must look[] to matters outside the complaint."  *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) (quotation omitted).  Further, "[i]n deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons."  *Id.* (quotation and internal quotation marks omitted).

### B. *Colorado River* Abstention

"A motion to dismiss based on *Colorado River* is considered as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure."  *Stahl York Ave. Co., LLC v. City of N.Y.*, 14-cv-7665, 2015 WL 2445071, at *7

(S.D.N.Y. May 21, 2015) (quotation omitted).  In considering a Rule 12(b)(1) motion, a court must accept as true all the material factual allegations contained in the complaint, but a court is "not to draw inferences from the complaint favorable to plaintiffs."  *J.S. ex. rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).  Additionally, a court "may refer to evidence outside the pleadings."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

## III.    Discussion

Defendant Paul seeks dismissal for insufficient service of process, or in the alternative, dismissal or a stay of these proceedings pursuant to the *Colorado River* abstention doctrine.  Each argument is discussed in turn.

### A.    Insufficient Service of Process

The Court begins, as it must, with service of process.  In order for this Court to exercise jurisdiction over Paul, "the procedural requirement of service of summons must be satisfied."  *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987).  Accordingly, the adequacy of service of process must be resolved "before any merits-based challenge to the complaint."  *George*, 221 F. Supp. 3d at 442 n.7.

Paul offers alternative arguments suggesting Tuebor failed to properly serve him.  (Dkt. 11 at 18–26; Dkt. 21 at 6–12.)  Only two are relevant.[3]  Paul's first argument is that Tuebor

---

[3] Paul argues at length that the World Class receptionist upon whom process was served "is not (and never was) authorized to accept service of any legal documents on behalf on Mr. Paul or World Class." (Dkt. No. 11 at 16.)  Contrary to what Paul claims, this is not dispositive. Pursuant to Federal Rule of Civil Procedure 4(h)(1)(A), World Class, a corporation and Paul's designated agent under the guaranty, can be served "in any manner prescribed by Rule 4(e)(1) for serving an individual."  Fed. R. Civ. P. 4(h)(1)(A).  Rule 4(e)(1) allows for service pursuant to the "state law . . . in the state where the district court is located."  Fed. R. Civ. P. 4(e)(1). Under New York law, a "process server cannot be expected to know [a] corporation's internal practices," and so long as the "circumstances [that the] service [was] made [is] in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained."  *Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 N.Y.2d 265, 272 (1980).  And, as Paul

5

failed to serve him pursuant to New York Civil Practice Law and Rules § 308(2) because it failed to serve him at his "actual place of business, dwelling place or usual place of abode," and failed to file an affidavit as "proof of such service" twenty days after serving him, as required by § 308(2).[4]  N.Y. C.P.L.R § 308(2).  Tuebor responds that it properly served World Class, Paul's designated agent under the guaranty, pursuant to Federal Rule of Civil Procedure 4(e)(2)(C). (Dkt. No. 19 at 10–14.)

First, Paul's § 308(2) argument is in vain.  Though he is correct in pointing out that in the proof of service filed (late) by Tuebor, the process server seemingly suggests that he served process pursuant to § 308(2) (Dkt. No. 21 at 6–7), while Tuebor has stated that it served process

---

correctly points out, "the same rules apply" for serving a corporation, even if the "corporation [is] in the guise of a designated agent," as is the case here.  (Dkt. No. 21 at 10 (citing *Thorpe v. Dumas, et al.*, 788 Fed. App'x. 644 (11th Cir. 2019)).)  Objectively viewed, Ms. Medwed, the receptionist, responding to the process server's statement that "he had a document to deliver [to] Mr. Natin Paul" by "collect[ing] the papers from" the process server (Dkt. No. 13 ¶¶ 4, 6), sufficiently suggests the process server reasonably relied on Ms. Medwed to deliver the papers to Paul.  *See Old Republic Ins. Co. v. Pacific Fin. Serv. of America, Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) (citing *Fashion Page*, 50 N.Y.2d at 273–74) ("As long as [a] process server's reliance on corporate personnel is reasonable, the defendant may not later complain that it lacked notice even if the complaint was mistakenly delivered to a person who was not authorized to accept service.").

[4] § 308(2) allows service:

[B]y delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other;  proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later.

N.Y. C.P.L.R. § 308(2).

pursuant to Rule 4(e)(2)(C).  (Dkt. 19 at 10–11.)  And, when a process server's statement on the method of service is incorrect, "[p]laintiffs should be [allowed] to correct [the] reference to the wrong [method] . . . provided they can prove that service satisfied the requirements of the method on which they rel[ied]."  *Three Crown Ltd. P'ship v. Caxton Corp.*, 817 F. Supp. 1033, 1051 (S.D.N.Y. 1993).  Here, as discussed next, Tuebor has adequately proven that it properly served Paul's designated agent pursuant to Rule 4(e)(2)(C).

Paul's second argument is that Tuebor failed to serve him pursuant to Rule 4(e)(2)(C) because it failed to serve his agent as designated in the guaranty by not serving World Class's Legal Department.  (Dkt. No. 11 at 24–25; Dkt. No. 19 at 7–12.)  Tuebor counters that "an 'attention' line does not serve to convert the agent designated for process from the entity itself to a specific department within the entity."  (Dkt. No. 19 at 14.)

Rule 4(e)(2)(C) allows service of process on an individual by "delivering a copy . . . to an agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(e)(2)(C).  Importantly, Rule 4(e)(2)(C) "require[es] a clear and specific appointment of the person served as one authorized to accept service of process."  *Jackson v. Cty. of Nassau*, 330 F. Supp. 2d 473, 478 (E.D.N.Y. 2004) (citations omitted).  Per the guaranty, Paul authorized and appointed World Class as his agent to accept and acknowledge service of process on his behalf.  (SAC ¶ 7.)  Tuebor properly served World Class as Paul's agent — an attention line is not sufficient to thwart that service and does not transform Paul's agent from World Class to a particular department within World Class.  Paul cites no authority to the contrary.  Further,

Paul's already meritless argument is diminished by the fact that the service of process was promptly sent to him, such that he received timely notice of Tuebor's suit.[5]

Accordingly, Defendant Paul's motion to dismiss for insufficient service of process is denied.

### B. *Colorado River* Abstention

Paul next asks the Court to dismiss or stay these proceedings pursuant to the *Colorado River* abstention doctrine "based upon the pendency of the parallel lawsuit . . . in Texas" (Dkt. No. 21 at 13), and because, he argues, all of the *Colorado River* factors favor abstention. (Dkt. No. 11 at 27–33; Dkt. No. 21 at 13–15.) Tuebor argues that the current proceedings and the Texas proceedings are not parallel, and that, regardless, the *Colorado River* factors favor maintaining jurisdiction. (Dkt. No. 19 at 15–22.)

The *Colorado River* abstention doctrine provides that in "exceptional" circumstances "reasons of wise judicial administration" can counsel in favor of abstention, *Colo. River Water Conservation Dist. v. United States.*, 424 U.S. 800, 818 (1976), if "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (quotation omitted). The first step is to determine "if the state and federal proceedings are parallel." *Smulley v. Mutual of Omaha Bank*, 634 Fed. Appx. 335, 336 (2d Cir. 2016) (quotation omitted). Then, to determine whether abstention is appropriate, courts consider six factors, "with

---

[5] "[P]rompt acceptance and transmittal to the [party] of the summons and complaint pursuant to the authorization [is] itself sufficient to validate the agency." *Orix Fin. Serv., Inc. v. Martin*, 05-cv-8634, 2011 WL 13257692 at *4 (S.D.N.Y. Mar. 8, 2011) (quoting *Nat'l Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964)).

the balance heavily weighted in favor of jurisdiction." *Niagara Mohawk Power Corp.*, 673 F.3d 84 at 100 (quotation omitted).

### 1. Whether the Proceedings Are Parallel

Paul argues that the two proceedings "have the same issues at their core" — namely, Tuebor seeking "recovery of the obligations owed" by Paul — and are thus parallel. (Dkt. No. 21 at 13.) Tuebor argues at length that the proceedings involve different parties and different issues. (Dkt. No. 19 at 15–19.)

"'[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*.'" *Sitgraves v. Fed. Home Loan Mortg. Corp.*, 265 F. Supp. 3d 411, 413 (S.D.N.Y. 2017) (quoting *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). "'Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum.'" *Id.* (quoting *Niagara Mohawk Power Corp.*, 673 F.3d at 100). Importantly, "[p]erfect symmetry of parties and issues is not required." *Id.* (quotation and internal quotation marks omitted). Further, "even if different relief is sought in the two actions, or the claims are not exactly the same, they are parallel as long as the causes of action are comprised of the same essential issues." *Garcia v. Tamir*, 99-cv-298, 1999 WL 587902, at *3 (S.D.N.Y. Aug. 4, 1999) (citing *General Reinsurance Corp. v. Ciba-Geigy Corp.*, 853 F.2d 78, 81 (2d Cir. 1988)).

The instant action and the Texas state court action are parallel because in both actions Tuebor is seeking recovery as a result of Paul's breaches under the loan and guaranty. The fact that Tuebor seeks recovery via a judicial foreclosure in Texas state court and recovery via a monetary judgment here makes no difference, in light of the fact that the breaches pleaded by Tuebor here are the same breaches pleaded in Texas state court. *Id.* at *3 (citing *General*

*Reinsurance Corp.*, 853 F.2d at 81) ("[E]ven if different relief is sought in the two actions, or the claims are not exactly the same, *they are parallel as long as the causes of action are comprised of the same essential issues*.") (emphasis added).  Additionally, Tuebor itself has admitted that it may be "paid in full" as a result of the Texas state court proceedings, which would moot this proceeding in its entirety.  (*See* Dkt. No. 19 at 16.)  Accordingly, the Court concludes that the two actions are parallel.

### 2. Application of the *Colorado River* Factors

Because the Court has determined that this action and the Texas state court action are parallel, the Court now must determine "whether *Colorado River* abstention is appropriate" by "consider[ing] [these] six factors, with the balance heavily weighted in favor of the exercise of jurisdiction":

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Niagara Mohawk Power Corp.*, 673 F.3d at 100–01 (citation and internal quotation marks omitted).

### i. Jurisdiction Over a Res

The starting point of the analysis is "whether the federal or state court has obtained jurisdiction over a res."  *Id.* at 101 (citing *Colo. River Water Conservation Dist.*, 424 U.S. at 818 ("It has been held . . . that the court first assuming jurisdiction over a property may exercise that jurisdiction to the exclusion of other courts." (citations omitted))).  Although the instant action does not itself 'involve' a res, the Texas state court exercised jurisdiction over Silicon Hills's

Austin, Texas property, which "the claims and defenses herein are inextricably linked to" (Dkt. No. 21 at 13), as a result of the property being used to secure the loan that Paul, as guarantor, subsequently breached. *See Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 299 (S.D.N.Y. 2017) (concluding that "[a]lthough the . . . claims here do not independently implicate a res, they remain inextricably linked with the issues" in the state court proceedings, and "[t]herefore, this factor weighs in favor of abstention."). Consequently, this factor weights in favor of abstention.

### ii. Inconvenience to the Parties

The next factor requires the Court to determine "whether the federal forum is less inconvenient than the state forum for the parties." *Niagara Mohawk Power Corp.*, 673 F.3d at 101. Though Paul agreed to a forum selection clause listing New York courts as the "proper forums for any legal proceedings arising from the [g]uaranty" (Dkt. No. 19 at 20), "*Colorado River* abstention is not the same as contesting venue or personal jurisdiction" and "the Court may conduct its own analysis under *Colorado River* even if the Defendants have signed such a forum selection clause, as the Court determines its own jurisdiction." *Quality Leasing Co. v. Shumate*, NO. 18-cv-23, 2019 WL 3067250, at *2 (N.D. Ind. Jul. 10, 2019) (citing *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510 (7th Cir. 2001)). While New York is Tuebor's principal place of business (SAC ¶ 1), this suit's only other connection to New York comes by way of the forum selection clause. Although it may be convenient for Tuebor to litigate in New York based on proximity, it, not to mention Paul, would still be faced with the "plain[] inconvenience" that comes with "having to litigate actively in both state and federal courts at the same time." *Phillips*, 252 F. Supp. 3d at 299 (quotation omitted); *see also Colony Ins. Co. v. Danica Group, LLC*, 13-cv-1714, 2014 WL 4417353, at *7 (E.D.N.Y. Sept. 8, 2014) ("[F]orcing [Defendant] to

11

litigate in two courts would be unduly burdensome to [Defendant]."). Accordingly, this factor weighs in favor of abstention, albeit modestly. *See id.*

### iii.    Avoiding Piecemeal Litigation

"The danger of piecemeal litigation is the 'paramount consideration' in the abstention analysis." *Sitgraves*, 265 F. Supp. 3d at 414 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 19 (1983)). "If '[m]aintaining virtually identical suits in two forums under these circumstances would waste judicial resources and invite duplicative effort,' the avoidance of piecemeal litigation is best served by leaving these suits in the state court." *Id.* (quoting *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y.*, 762 F.2d 205, 211 (2d Cir. 1985)). These principles are salient here. Because Tuebor may recover the full principal amount in the Texas state court proceedings, moving the current action forward risks a "waste [of] judicial resources" without first waiting to see if Tuebor even needs to continue this suit to recover. *Id.* This factor therefore weighs in favor of abstention.

### iv.    Filing Order

When considering the order in which the actions were filed, the relevant inquiry is not "the sequence in which the cases were filed, but rather in terms of how much progress has been made in the two actions." *Niagara Mohawk Power Corp.*, 673 F.3d at 102 (quotation and internal quotation marks omitted). Because, as of December 24, 2019, "the Texas court ha[s] already heard 11 motions and issu[ed] at least 6 orders" (Dkt. No. 21 at 14), and this Court has heard only 3 motions and issued 4 orders (including this one) (Dkt. Nos. ¶¶ 5–7, 10, 24–25), this factor weighs in favor of abstention.

12

### v.     Whether Federal Law Provides the Rule of Decision

The next factor requires the Court to determine "what law—state, federal, or foreign—provides the rule of decision in the case." *Niagara Mohawk Power Corp.*, 673 F.3d at 102 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 23)). "When the applicable substantive law is federal, abstention is disfavored." *Id.* (quotation omitted). And, though "the absence of federal issues does not *strongly* advise dismissal . . . it does favor abstention where the bulk of the litigation would necessarily revolve around the state-law rights of [the] parties." *Phillips*, 252 F. Supp. 3d at 301 (citation and internal quotation marks omitted). Tuebor's breach of contract action is governed by state law, which weighs in favor of abstention, regardless of the fact that the guaranty provides that disputes under it are governed by New York state law specifically. *See id.*; (Dkt. No. 19 at 22.) Though, as Tuebor suggests, there is a reasonable presumption that a district court sitting in New York will have a better understanding of New York state law than a state court sitting in Texas (Dkt. No. 19 at 22), the focus of this inquiry is whether federal or state law governs. *See Niagara Mohawk Power Corp.*, 673 F.3d at 102. Accordingly, because this breach of contract action "revolve[s] around the state-law rights" of Tuebor and Paul, this factor favors abstention. *Phillips*, 252 F. Supp. 3d at 301 (citation and internal quotation marks omitted).

### vi.     Adequacy of State Procedures to Protect Plaintiff's Federal Rights

The last factor is whether Texas state court procedures "are adequate to protect [Tuebor's] federal rights." *Niagara Mohawk Power Corp.*, 673 F.3d at 103 (quotation omitted). Because there are "no federal rights . . . at stake," *Phillips*, 252 F. Supp. 3d at 302 (quotation omitted), this factor is neutral, and thus, weighs against abstention. *See Niagara Power Corp.*,

673 F.3d at 101 (quotation omitted) ("Where a *Colorado River* factor is facially neutral, that "is a basis for retaining jurisdiction, not yielding it.").

\* \* \*

Considering the factors together — of which all but the last weigh in favor of abstention — the Court concludes that abstention is proper.

"When a Court chooses to abstain pursuant to *Colorado River*, it may elect to stay actions for damages or dismiss actions seeking equitable or otherwise discretionary relief." *Phillips*, 252 F. Supp. 3d at 303 (quotation omitted). Because Tuebor is seeking damages and not equitable relief, this case will be stayed pending the resolution of the proceedings in the Texas state court.

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is DENIED. Defendant's motion to stay is GRANTED pending resolution of the Texas state court proceedings.

The parties are directed to advise the Court of any resolution of the Texas proceedings by joint letter filed on ECF.

The Clerk of Court is directed to close the motions at Docket Number 10 and to mark this case as STAYED.

SO ORDERED.

Dated: August 19, 2020
New York, New York

_____
J. PAUL OETKEN
United States District Judge