UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TUEBOR REIT SUB LLC, <br><br> Plaintiff <br><br> v. <br><br> NATIN PAUL a/k/a NATE PAUL, <br><br> Defendant. | Case No. 19-cv-8540-JPO |

## MEMORANDUM OF LAW
## IN SUPPORT OF LENDER'S MOTION FOR RECONSIDERATION

POLSINELLI PC
Jason A. Nagi
Frank T. Spano
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 684-0199
jnagi@polsinelli.com
fspano@polsinelli.com

-and-

Brett D. Anders
(*pro hac vice to be submitted*)
Bradley R. Gardner
900 West 48th Place, Suite 900
Kansas City, Missouri 64112
(816) 753-1000
banders@polsinelli.com
bgardner@polsinelli.com

*Attorneys for Plaintiff*

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.T. Clayton & Co. v. Hachenberger*,
   920 F. Supp. 2d 258 (D. Conn. 2013) ................................................................17

*Am-Haul Carting, Inc. v. Contractors Cas. & Sur. Co.*,
   33 F. Supp. 2d 235 (S.D.N.Y. 1998) ..................................................................7

*Beck v. Consol. Rail Corp.*,
   394 F. Supp. 2d 632 (S.D.N.Y. 2005) ..........................................................11, 16

*City of New York v. Clarose Cinema Corp.*,
   256 A.D.2d 69, 681 N.Y.S.2d 251 (1st Dep't 1998) ..........................................13

*Colorado River. Sitgraves v. Fed. Home Loan Mortg. Corp.*,
   265 F. Supp. 3d 411 (S.D.N.Y. 2017) ......................................1, 7, 10, 11, 14, 16, 19

*In re Comverse Tech., Inc. Derivative Litigation*,
   2006 WL 3193709 (E.D.N.Y. Nov. 2, 2006) ......................................................14

*Credit Suisse First Boston Mortgage Capital LLC v. Cohn*,
   No. 03 CIV. 6146 (DC), 2004 WL 1871525 (S.D.N.Y. Aug. 19, 2004) ...............10

*CrossLand Federal Savings Bank by F.D.I.C. v. A. Suna & Co.*,
   935 F. Supp. 184 (E.D.N.Y. 1996) ...................................................................10

*Cunard S.S. Co. v. Salen Reefer Services AB*,
   773 F.2d 452 (2d Cir. 1985) .............................................................................8

*In re Extended Stay Inc.*,
   418 B.R. 49 (Bankr. S.D.N.Y. 2009), *aff'd in relevant part*, 435 B.R. 139
   (S.D.N.Y. 2010) ...............................................................................................6

*In re Garnett*,
   303 B.R. 274 (E.D.N.Y. 2003) ..........................................................................8

*General Reinsurance Corp. v. Ciba-Geigy Corp*,
   853 F.2d 78 (2d Cir. 1988) ..............................................................................12

*Glob. Network Commc'ns, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006) ..............................................................................6

74613354.6

*Healthcare Co. Ltd. v. Upward Mobility, Inc.*,
    784 F. App'x 390 (6th Cir. 2019) .......................................................7

*Hilton v. Guyot*,
    159 U.S. 113, 16 S. Ct. 139 (1895) ....................................................7

*In re Hypnotic Taxi LLC*,
    No. 15-43300 (CEC), 2018 WL 3339580 (Bankr. E.D.N.Y. July 5, 2018) .........................17

*Isaacs v. Hobbs Tie & Timber Co.*,
    282 U.S. 734, 51 S. Ct. 270 (1931) ....................................................8

*Jianjun Lou v. Trutex, Inc.*,
    872 F. Supp. 2d 344 (S.D.N.Y. 2012) .................................................6

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
    412 F.3d 418 (2d Cir. 2005) ...........................................................7

*Marcus Dairy, Inc. v. Jacene Realty Corp.*,
    225 A.D.2d 528, 638 N.Y.S.2d 779 (2d Dep't 1996) .................................13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) ..............................19

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*,
    673 F.3d 84 (2d Cir. 2012) ............................................................19

*People v. Highgate LTC Mgmt., LLC*,
    69 A.D.3d 185, 887 N.Y.S.2d 298 (3d Dep't 2009) ...........................11, 16

*In re S. Side House, LLC*,
    470 B.R. 659 (Bankr. E.D.N.Y. 2012) ...........................................9, 10, 17

*Schumacher v. White*,
    429 B.R. 400 (E.D.N.Y. 2010) .....................................................9, 17

*Shields v. Murdoch*,
    891 F.Supp.2d 567 (S.D.N.Y. 2012) .................................................14

*In re Stage Presence, Inc.*,
    592 B.R. 292 (Bankr. S.D.N.Y. 2018), *aff'd*, No. 12-10525 (MEW), 2019 WL
    2004030 (S.D.N.Y. May 7, 2019) ..............................................11, 16

*Stoller's, Inc. v. People's Trust Bank (In re Stoller's Inc.)*,
    93 B.R. 628 (Bankr. N.D. Ind.1988) ..................................................10

*Swift & Co. v. Novotny*,
    28 N.Y.S.2d 562 (N.Y. Sup. Ct., Westchester County, 1941)........................15

74613354.6

**Statutes**

28 U.S.C.A. § 1334 ..................................................................................................... 8

11 U.S.C. 362 ............................................................................................... 6, 8, 10

11 U.S.C. § 524 .......................................................................................................... 12

11 U.S.C. § 1141 ........................................................................................................ 12

**Other Authorities**

Federal Rule of Civil Procedure 12 ...................................................................... 1, 6

63 N.Y. Jur. 2d Guaranty and Suretyship § 82 ....................................................... 15

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND.....................................................................................2

    A.      The Loan...........................................................................................2

    B.      The Guaranty ...................................................................................3

    C.      Borrower's Defaults .........................................................................4

    D.      The Texas Action .............................................................................5

    E.      The Bankruptcy.................................................................................6

ARGUMENT.............................................................................................................7

    I.     The Order Did Not Consider Borrower's Bankruptcy Filing or the Stayed Texas Action...........................................................................................................7

    II.    As a Threshold Matter, The Order Incorrectly Concluded That the Proceedings Are Parallel .........................................................................................................11

    III.   Even if the Proceedings Were Parallel (They are Not), the Court Erred in Finding That the *Colorado River* Factors Support Staying This Action. ...............................14

          (A)      NEITHER ACTION INVOLVES A RES ......................................................14

          (2)      GUARANTOR IS NOT BEING FORCED TO LITIGATE IN TWO FORUMS........16

          (3)      PIECEMEAL LITIGATION IS NOT A RISK BECAUSE THE ACTIONS INVOLVE SEPARATE AND DISTINCT CLAIMS ......................................................16

          (4)      THE INDEFINITE STAY OF THE TEXAS ACTION WEIGHS AGAINST ABSTENTION .....................................................................................18

          (5)      REGARDLESS OF WHICH LAW PROVIDES THE RULE OF DECISION, ONLY THIS COURT WILL BE ASKED TO RESOLVE THE RIGHTS AND OBLIGATIONS THAT RUN BETWEEN LENDER AND GUARANTOR ...............................19

          (6)      THE STATE COURT PROCEEDING HAS BEEN STAYED INDEFINITELY AND THERE IS NO PROSPECT OF A COMPLETE AND PROMPT RESOLUTION, WHICH PREJUDICES LENDER'S RIGHTS ...............................................19

    CONCLUSION .....................................................................................................20

Plaintiff TUEBOR REIT SUB LLC ("**Lender**"), in support of its Motion for Reconsideration (the "**Motion**"), states as follows.

## PRELIMINARY STATEMENT

Lender, respectfully, requests that the Court reconsider its Opinion and Order dated August 19, 2020 (Dkt. No. 28) (the "**Order**") staying this action in favor of an action between different parties pending in Texas state court (which Lender contends is *not* a "parallel action").[1] The Order contains several critical factual errors which, when applied to the *Colorado River* factors, resulted in the Court incorrectly staying this action.

First, the Order does not acknowledge or mention that the Texas Action (defined below) itself is indefinitely stayed due to the bankruptcy of the sole defendant in that action. Due to the bankruptcy, it is highly likely that the Texas Action will *never* recommence. That means the Court's Order staying this action is essentially an indefinite stay. By indefinitely staying this action, the Court has effectively stripped Lender of its bargained-for rights and remedies under the Guaranty (defined below) with respect to the $64,000,000.00 loan made to Borrower (defined below). The Guaranty is a separate, independent obligation of Guarantor that can, and should, be resolved with no reference to the Texas Action or the bankruptcy.

Second, the Order mistakenly contains misstatements regarding the parties to the Texas Action, the nature of the defaults under the Loan Documents (defined below), the non-judicial nature of foreclosure in Texas, and the likelihood of Lender being repaid as a result of the Texas Action. This action and the Texas Action do not involve the same parties or the same issues. When the correct facts are applied to the *Colorado River* doctrine, it is clear that abstention is not warranted and that this action should not be stayed.

---

[1] The Order was entered in response to Defendant's Motion to Dismiss the Amended Complaint in its Entirety Pursuant to Rules 12(b)(1) and 12(b)(5) of the Federal Rules of Civil Procedure and Memorandum of Law in support thereof (Dkt. Nos. 10-11) (collectively, the "**Motion**").

74613354.6

Accordingly, and for the reasons explained below, Lender respectfully requests that the Court reconsider and vacate the Order, and instead enter an order denying the Motion and directing that this case proceed.

## FACTUAL BACKGROUND

**A.     The Loan**

1.      On or about February 6, 2018, Ladder Capital Finance LLC ("**Original Lender**") made a commercial real estate mortgage loan to Silicon Hills Campus, LLC ("**Borrower**") in the original principal amount of $64,000,000.00 (the "**Loan**").

2.      The Loan is evidenced in part by that certain Loan Agreement, dated as of February 6, 2018 (as amended from time to time, the "**Loan Agreement**"), a true and correct copy of which is attached to Lender's Second Amended Complaint (Dkt. No. 26) as **Exhibit B** and incorporated herein by reference.

3.      The Loan is further evidenced in part by that certain Promissory Note, dated as of February 6, 2018 (as amended from time to time, the "**Note**"), in the original principal amount of $64,000,000.00, a true and correct copy of which is attached to Lender's Second Amended Complaint as **Exhibit C** and incorporated herein by reference.

4.      Under the Loan Documents, Borrower agreed to pay the full amount of the Loan on or before the Maturity Date (as defined in the Loan Agreement). (Second Amended Complaint, at ¶ 23).

5.      The Maturity Date, after various amendments and extensions detailed in the Second Amended Complaint, occurred on August 30, 2019. (Second Amended Complaint, at ¶ 31).

**B.** **The Guaranty**

6.      In connection with the Loan, defendant Natin Paul ("**Guarantor**") signed and delivered a Guaranty of Recourse Obligations, dated as of February 6, 2018 (as amended from time to time, the "**Guaranty**").  A true and correct copy of the Guaranty is attached to Lender's Second Amended Complaint as **Exhibit A**.

7.      Pursuant to the Guaranty, Guarantor guaranteed payment of $3,000,000.00 of the unpaid principal balance of the Loan at the Maturity Date, together with any accrued and unpaid interest thereon, on a recourse basis.  Guarantor guaranteed the balance of the Loan on a nonrecourse basis, with recourse liability on the part of Guarantor (either in part or in full) on such portion of the Loan to be triggered upon the occurrence of certain events.

8.      The Guaranty provides that, upon the occurrence of certain events, the entire Loan shall be fully recourse to Guarantor (the "**Recourse Obligations**"). (Second Amended Complaint, at ¶ 12).

9.      The Guaranty also provides, in Section 1.1, that "Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations **as a primary obligor**." (Guaranty, at Section 1.1) (emphasis added).  Guarantor also agreed in the Guaranty that Lender could pursue Guarantor for the full amount of the debt owed under the Loan Documents, without having to look to Borrower or the Property first.  (Guaranty, at Section 1.6) ("It shall not be necessary for Lender (and Guarantor hereby waives any rights which Guarantor may have to require Lender), in order to enforce the obligations of Guarantor hereunder, first to (i) institute suit or exhaust its remedies against Borrower … (ii) enforce Lender's rights against any collateral which shall ever have been given to secure the Loan … (iv) join Borrower or any other liable on the Guaranteed Obligations in any action seeking to

enforce this Guaranty, (v) exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Loan, or (vi) resort to any other means of obtaining payment of the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations.").

10. Among other things, the filing of a voluntary petition by Borrower under the United States Bankruptcy Code (the "**Bankruptcy Code**") triggers Guarantor's full recourse liability under the Guaranty for the entire balance of the Loan. (Second Amended Complaint, at ¶ 13).

11. Lender bargained for the full-recourse trigger tied to Borrower's bankruptcy so that, in the event Borrower invoked the special debt-adjustment powers of the Bankruptcy Code, Lender could still recover in full from Guarantor.

12. In addition, the Borrower's failure to obtain Original Lender's prior written consent to any Transfer (as defined in the Loan Agreement), except to the extent permitted by the Loan Documents, triggers Guarantor's full recourse liability for the entire balance of the Loan. (Second Amended Complaint, at ¶ 14).

## C.   Borrower's Defaults

13. Borrower failed to make the required payment of the Loan as of the Maturity Date. The entire unpaid balance of the Note remains immediately due and owing. (Second Amended Complaint, at ¶ 32).

14. Additionally, a mechanic's lien was filed against the real property with an address of 6801 River Place Boulevard, Austin Texas (the "**Property**"), which secures the debt owed under the Loan, in the amount of approximately $107,000.00. (Second Amended Complaint, at ¶ 26).

15. "Transfer" is defined in the Loan Agreement in broad terms sufficient to include the placement, or incurring, of any encumbrance such as a lien, including an involuntary lien, against the Property. (Second Amended Complaint, at ¶ 27).

16. Accordingly, when the mechanic's lien claimant recorded a lien against the Property, a Transfer occurred under the terms and provisions of the Loan Agreement. (Second Amended Complaint, at ¶ 28).

17. Borrower failed to obtain Lender's prior written consent to the Transfer, which Transfer constitutes an Event of Default under the Loan Documents.

18. The Transfer triggered full-recourse liability to Guarantor for the entire amount of the debt owed under the Loan Documents. (Second Amended Complaint, at ¶ 29).

**D.** **The Texas Action**

19. As a result of Borrower's failure to repay the Loan in full upon the Maturity Date, Lender commenced an action in Texas state court (the "**Texas Action**") against Borrower (*and not Guarantor*) seeking (1) appointment of a receiver and (2) a money judgment on the Note.

20. Lender also initiated a non-judicial foreclosure of the Property under Texas's non-judicial foreclosure law, which allows property to be foreclosed and sold without court involvement after a statutory notice period.

21. The Court in the Texas Action appointed a receiver to take possession of and administer the Property. Though the Court in the Texas Action initially enjoined Lender from proceeding with the non-judicial foreclosure, Lender was ultimately allowed to proceed with its non-judicial foreclosure of the Property.

22. At Lender's direction, a non-judicial foreclosure sale was scheduled for January 11, 2020.

### E.    The Bankruptcy

23.     On January 7, 2020, Borrower filed a petition for relief (the "**Bankruptcy Petition**") pursuant to Chapter 11 of Title 11 of the Bankruptcy Code. A true and correct copy of the Bankruptcy Petition is attached to Lender's Second Amended Complaint as **Exhibit I**.

24.     The Bankruptcy Petition was filed in the United States District Court for the Southern District of Texas (the "**Bankruptcy Court**"), as Case No. 20-10042-TMD (Bankr. S.D. Tex.) (the "**Bankruptcy**").[2]

25.     Immediately upon the filing of the Bankruptcy Petition, the Texas Action against Borrower was stayed pursuant to the automatic stay provisions of 11 U.S.C. 362.

26.     The Texas Action remains stayed indefinitely by virtue of 11 U.S.C. 362, as Borrower is the only defendant in the Texas Action and any claims against Borrower related to the Texas Action are now within the jurisdiction of the Bankruptcy Court.

27.     Neither Borrower nor Guarantor sought an extension of the automatic stay for the benefit of Guarantor. Only actions against Borrower are stayed by the Bankruptcy.

28.     Upon Borrower's filing of the Bankruptcy Petition, pursuant to the terms of the Guaranty, Guarantor became <u>immediately</u> liable not only for the unconditional $3,000,000.00 of the unpaid balance of the Loan and interest thereon, but for the entire remaining amount of the indebtedness owed under the Note and other Loan Documents. (Second Amended Complaint, at

---

[2] In connection with a Motion to Dismiss, the Court can take judicial notice of proceedings in other courts. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."); *Jianjun Lou v. Trutex, Inc.*, 872 F. Supp. 2d 344, 350 n.6 (S.D.N.Y. 2012) ("In the Rule 12(b)(6) context, a court may take judicial notice of prior pleadings, orders, judgments, and other related documents that appear in the court records of prior litigation and that relate to the case *sub judice*."); *see also generally J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing cases for rule that, in resolving a 12(b)(1) motion, courts "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue")

¶ 25).[3] Lender's claims against Guarantor under the Guaranty are not within the jurisdiction of the bankruptcy court. *See In re Extended Stay Inc.*, 418 B.R. 49, 60 (Bankr. S.D.N.Y. 2009), *aff'd in relevant part*, 435 B.R. 139 (S.D.N.Y. 2010) (where a "claim by a non-debtor against a non-debtor involving guarantees, the claim is external to the bankruptcy process"). Such claims are also not stayed as a result of Borrower's bankruptcy. *See Am-Haul Carting, Inc. v. Contractors Cas. & Sur. Co.*, 33 F. Supp. 2d 235, 242 (S.D.N.Y. 1998) ("The automatic stay of Section 362(a) protects only the debtor, property of the debtor or property of the estate, not non-debtor parties or their property. Thus, **Section 362(a) does not stay actions against guarantors** or sureties.") (internal citations and quotations omitted) (emphasis added). Since Guarantor is not a debtor and no extension of the stay was granted by the Bankruptcy Court, ***the only court with jurisdiction over Lender's claim against Guarantor under the Guaranty is this Court***.

29.     Guarantor has not made any payment under the terms of the Guaranty, of either the unconditional $3,000,000.00 or the entire amount of the indebtedness owed under the Note and other Loan Documents, and remains in default thereunder. (Second Amended Complaint, at ¶ 34).

## ARGUMENT

### I.     The Order Did Not Consider Borrower's Bankruptcy Filing or the Stayed Texas Action

In the Order, the Court did not acknowledge the existence of the Bankruptcy, nor did the Court evaluate the impact of the Bankruptcy on the Texas Action or on Lender's rights against Guarantor. *Colorado River* abstention is rooted, in part, in comity. *Healthcare Co. Ltd. v. Upward Mobility, Inc.*, 784 F. App'x 390, 393 (6th Cir. 2019). Comity is a legal doctrine designed to facilitate one court's recognition of the jurisdiction of another. *See JP Morgan Chase*

---

[3] Borrower's filing of the Bankruptcy Petition is also an additional Event of Default under the Loan Documents.

*Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) (explaining that comity is "the discretion of a national court to decline to exercise jurisdiction over a case before it when that case is pending in a foreign court with proper jurisdiction."); *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S. Ct. 139, 143 (1895) ("[Comity] is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.").

After Borrower filed the Bankruptcy, exclusive jurisdiction over Borrower and its assets (including the Property) vested in the Bankruptcy Court, and the Texas state court no longer had jurisdiction. *See* 28 U.S.C.A. § 1334 (e)(1) ("The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction – of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."); *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 737-38, 51 S. Ct. 270, 271–72 (1931) ("Upon adjudication, title to the bankrupt's property vests in the trustee with actual or constructive possession, and is placed in the custody of the bankruptcy court…this withdraws the property from the jurisdiction of all other courts which, though of concurrent jurisdiction, may not disturb that possession; and that the court originally acquiring jurisdiction is competent to hear and determine all questions respecting title, possession, and control of the property.") (internal citations omitted); *In re Garnett*, 303 B.R. 274, 277 (E.D.N.Y. 2003) ("Thus the filing of the petition commences the case, which has the effect under 28 U.S.C. § 1334(d) of vesting exclusive jurisdiction over the property of the debtor and of the estate in the district court, and hence the bankruptcy court, in which the petition is filed. In order to effectuate this exclusive jurisdiction, § 362 of the Bankruptcy Code provides for **an automatic stay of all actions against**

**the debtor** and all lien enforcement efforts against the property of the estate. *See* 11 U.S.C. § 362. Under § 362, state court actions against the debtor or the debtor's property, like Appellant's foreclosure action in the instant case, are automatically stayed by the filing of the bankruptcy petition.") (emphasis added). Comity is ***not applicable*** between courts when the court, to which jurisdiction would be deferred, has no jurisdiction. *See Cunard S.S. Co. v. Salen Reefer Services AB*, 773 F.2d 452, 457 (2d Cir. 1985) ("Comity will be granted to the decision or judgment of a foreign court if it is shown that the foreign court **is a court of competent jurisdiction**...") (internal citations omitted) (emphasis added).

Importantly, the **Texas state court no longer has jurisdiction over the Borrower or the Property, and Guarantor has never been a party to the Texas Action**. The Bankruptcy Court does not have, and has never had, jurisdiction over Guarantor, the Guaranty, or the dispute between Lender and Guarantor. Guarantor has not filed a petition under the bankruptcy code, has not subjected his assets to the jurisdiction of the Bankruptcy Court (or any bankruptcy court), and thus does not obtain the benefit of Bankruptcy Court's jurisdiction or the automatic stay. *See In re S. Side House, LLC*, 470 B.R. 659, 676 (Bankr. E.D.N.Y. 2012) ("A debtor's bankruptcy case ***does not relieve a guarantor of its liability under the guaranty***. Similarly, the automatic stay does not prevent a creditor from proceeding against a non-debtor guarantor. And New York law permits the enforcement of agreements that impose liability on guarantors when a borrower files for bankruptcy.") (internal citations omitted) (emphasis added); *Schumacher v. White*, 429 B.R. 400, 406 (E.D.N.Y. 2010) ("Here, it is possible for the lawsuit between Schumacher and White to be resolved without affecting the debtor's estate. This lawsuit involves a guaranty between two private individuals. To be sure, White entered into the guaranty in his individual capacity. Merely because White was guaranteeing a separate contract between plaintiff and a

corporation that is now in bankruptcy does not automatically bring this suit within the jurisdiction of the Bankruptcy Court."). Thus there are no comity principles at play vis-à-vis this Court, the Texas state court, or the Bankruptcy Court.

Further, the Guarantor does not obtain any benefits under his Guaranty from the activities of the Borrower's Bankruptcy Case. His obligations are not impacted by either the automatic stay or by any potential confirmation of any bankruptcy plan proposed by Borrower or any resulting discharge of Borrower. *Credit Suisse First Boston Mortgage Capital LLC v. Cohn*, No. 03 CIV. 6146 (DC), 2004 WL 1871525, at *8 (S.D.N.Y. Aug. 19, 2004) ("A discharge of liability pursuant to the bankruptcy laws generally **does not affect a guarantor's liability and leaves a creditor free to pursue collection from a guarantor**.") (emphasis added); *see also CrossLand Federal Savings Bank by F.D.I.C. v. A. Suna & Co.*, 935 F. Supp. 184, 202 (E.D.N.Y. 1996) ("**A bankruptcy stay against a corporation does not affect the obligations of or actions arising from the obligations of non-bankrupt guarantors**. As a result of the bankruptcy proceedings, New CrossLand has elected to pursue only its claims against the guarantor at this time. The stay of proceedings created by 11 U.S.C. § 362, therefore, does not affect this case and cannot be used as an affirmative defense by the Sunas.") (internal citations omitted) (emphasis added); *In re S. Side House, LLC*, 470 B.R. at 673 ("[W]hile a bankruptcy case may result in the discharge of the debtor's obligations or impair the claim of a creditor, **a non-debtor guarantor's liability is not modified by the bankruptcy process**, and the creditor retains its rights against the non-debtor guarantor outside of the bankruptcy case") (emphasis added); *Stoller's, Inc. v. People's Trust Bank (In re Stoller's Inc.),* 93 B.R. 628, 635–36 (Bankr. N.D. Ind.1988) (stating that "bankruptcy proceedings do not affect the liabilities of co-debtors and guarantors").

The existence of the Bankruptcy does not alter or affect Lender's bargained-for rights under the Guaranty to pursue Guarantor for the full amounts due and owing under the Guaranty, and the Borrower's Bankruptcy does not provide a basis to stay this action—an action in which the Borrower is not a party.

## II.    As a Threshold Matter, The Order Incorrectly Concluded That the Proceedings Are Parallel

In its Order, the Court noted that the existence of "parallel proceedings" is an absolute prerequisite to abstention under *Colorado River. Sitgraves v. Fed. Home Loan Mortg. Corp.*, 265 F. Supp. 3d 411, 413 (S.D.N.Y. 2017). While the Court observed that *Sitgraves* found that "perfect symmetry of parties" is not required, the facts in *Sitgraves* were much different than those present here. In *Sitgraves*, Bank of America (acting as a loan servicer for Freddie Mac), filed a foreclosure action against Ms. Sitgraves in New York state court. *Id.* at 412-413. Almost concurrently, Ms. Sitgraves filed an action in the Southern District of New York seeking a declaration that Bank of America and Freddie Mac (the owner of the loan, which was serviced by Bank of America) could not enforce the mortgage that was the subject of the foreclosure action. *Id.* Bank of America and Freddie Mac moved to dismiss under *Colorado River. Id.* Ms. Sitgraves argued that dismissal was inappropriate, explaining that the actions were not "parallel" because Freddie Mac was not a party to the foreclosure action. *Id.* at 413. The *Sitgraves* court concluded that the actions were parallel because Bank of America, as Freddie Mac's servicer and agent, was "substantially the same" as Freddie Mac. *Id.* The *Sitgraves* court also concluded that the "issues are the same in both actions—whether [Bank of America] may enforce the subject note and mortgage." *Id.* The facts in *Sitgraves* that led to the statement that "perfect symmetry of parties" is unnecessary are very, very different than the facts here.

Here, the parties to this action are Lender and Guarantor. In the Texas Action, the parties are Borrower and Lender. In the Bankruptcy, the debtor is Borrower. While Guarantor may be a direct or indirect equity owner of Borrower, taking into account corporate separateness concepts,[4] **Guarantor and Borrower are *not* substantially the same** (unlike in *Sitgraves* where Bank of America was the servicer and agent for Freddie Mac).

The Court also noted in its Order that actions may be parallel "as long as the causes of action are comprised of the same essential issues." (Order, at p. 10, citing *General Reinsurance Corp. v. Ciba-Geigy Corp*, 853 F.2d 78 (2d Cir. 1988). But the issues in this action and the Texas Action are very different. At issue in the Texas Action (and now the Bankruptcy) is whether Lender is entitled to a judgment *against Borrower* for the amounts due and owing under the Note and other Loan Documents due to *Borrower's* failure to repay the Loan in full upon its maturity. The critical elements in the Texas Action were (a) whether the Borrower executed the Loan Documents, and (b) whether the Borrower in fact failed to pay the Loan in full upon maturity as required. The Texas Action is now stayed, resulting in an entirely new issue existing as between Borrower and Lender: whether Borrower can obtain confirmation of a plan, under the Bankruptcy Code, that appropriately addresses Lender's claim against Borrower.

That, of course, has nothing to do with Lender's rights vis-à-vis Guarantor under the Guaranty. Even if Borrower confirms a plan in the Bankruptcy and thus obtains a discharge of

---

[4] "Like a corporation, a limited liability company is a legal entity separate and distinct from its members." *People v. Highgate LTC Mgmt., LLC*, 69 A.D.3d 185, 187, 887 N.Y.S.2d 298, 300 (3d Dep't 2009). *See also In re Stage Presence, Inc.*, 592 B.R. 292, 302 (Bankr. S.D.N.Y. 2018), *aff'd,* No. 12-10525 (MEW), 2019 WL 2004030 (S.D.N.Y. May 7, 2019) ("Under New York law, the separate existence and status of a corporation is not lightly disregarded."); *Beck v. Consol. Rail Corp.*, 394 F. Supp. 2d 632, 637–38 (S.D.N.Y. 2005) ("Generally, the law views corporations as entities endowed with a separate and distinct existence from that of its owners. Because a principal purpose for organizing a corporation is to permit its owners to limit their liability, there is a presumption of separateness between a corporation and its owners, which is entitled to substantial weight.") (internal quotations omitted).

its prepetition obligations under the Loan Documents (*see* 11 U.S.C. §§ 524, 1141), *Guarantor's obligations under his Guaranty remain the* same. Section 524 of the Code provides: "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor **does not affect the liability of any other entity on, or the property of any other entity for, such debt.**" (11 U.S.C. § 524(e)) (emphasis added). In short, nothing in the Texas Action (now stayed, perhaps never to resume) or in the Bankruptcy touches upon or relates to Guarantor's Guaranty, nor is Guarantor even a party to the Texas Action or the Bankruptcy. As such, none of Guarantor's defaults under the *Guaranty* are at issue in the Texas Action or in the Bankruptcy.

At issue in this action is whether Lender is entitled to collect from *Guarantor* the amounts due and owing under the Guaranty as a result of (a) the unconditional guaranty of $3,000,000.00 of the Loan, (b) Borrower's Bankruptcy filing, and (c) the impermissible Transfer. The critical elements in this action are (a) whether Guarantor executed the Guaranty, (b) whether Guarantor paid the unconditional $3,000,000.00, (c) whether Borrower filed for Bankruptcy, and (d) whether the Transfer occurred.

There is *thus no overlap whatsoever between the critical elements in this action and in the Texas Action*. And New York law, which governs here, unquestionably recognizes that guaranty agreements are separate and distinct obligations from the promissory note and other documents that the underlying borrower may have executed. *See Marcus Dairy, Inc. v. Jacene Realty Corp.*, 225 A.D.2d 528, 528, 638 N.Y.S.2d 779, 780 (2d Dep't 1996) ("[A] guarantee agreement is separate and distinct from the contract between lender and borrower … ."). The Guaranty is thus independently enforceable, regardless of any relief granted to Borrower in the Bankruptcy or in the Texas Action. While Lender may receive some payment from Borrower in the Bankruptcy to be applied against the balance of the Loan, that does not prevent Lender from

13

taking a judgment against Guarantor; Lender's only limitation would be on double *collection*.

*See City of New York v. Clarose Cinema Corp.*, 256 A.D.2d 69, 71, 681 N.Y.S.2d 251, 253 (1st

Dep't 1998) (remanding motion for summary judgment as to damages because although

guarantor was liable for payment under guaranty, fact finding was required to assess damages,

including specification of the amount actually left unsatisfied under loan for which guarantor

was responsible, in view of the inequity of potentially allowing the lender a double recovery of

the same funds). And at present, as further explained below, Borrower's Bankruptcy plan does

not purport to pay Lender everything it is owed under the Note and other Loan Documents in the

timeframe in which Lender is entitled to it (immediately). And nothing in the Bankruptcy

purports to resolve Guarantor's liability under the Guaranty.

This action and the Texas Action do not involve the same parties or the same issues. By

mistakenly conflating the obligations and breaches of Borrower and the obligations and breaches

of Guarantor, the Court incorrectly concluded that this action and the Texas Action are parallel.

They are not. Viewed through the proper lens, the actions are entirely different, and the Court

therefore should not have even reached the *Colorado River* factors because the prerequisite –

parallel actions – cannot be satisfied.[5] That alone warrants reconsideration, vacating the Order,

denial of Guarantor's Motion, and allowing this action to proceed.

### III. Even if the Proceedings Were Parallel (They are Not), the Court Erred in Finding That the *Colorado River* Factors Support Staying This Action.

#### (A) NEITHER ACTION INVOLVES A RES

Although the Texas Action involved a res (the Property) by virtue of the receivership at

the time the present action was initiated, the Bankruptcy divested the Texas state court of

---

[5] Lender notes, as it did in its opposition to the Motion, that "[a]ny doubt regarding the parallel nature of a federal and state action should be resolved in favor of the exercise of federal jurisdiction." *Shields v. Murdoch*, 891 F.Supp.2d 567, 577 (S.D.N.Y. 2012)) (quoting *In re Comverse Tech., Inc. Derivative Litigation*, 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)).

jurisdiction over the Property more than eight months ago. *See* Section I, *supra*. Additionally, Lender's claims against Guarantor are in no way inextricably linked to the Property or even Lender's claims against Borrower, as the Guaranty (and New York law) allows Lender to proceed against Guarantor regardless of the status of the Property, Lender's efforts to foreclose upon the Property, or Lender's enforcement actions against Borrower. (Guaranty, at Section 1.6 ("It shall not be necessary for Lender (and Guarantor hereby waives any rights which Guarantor may have to require Lender), in order to enforce the obligations of Guarantor hereunder, first to (i) institute suit or exhaust its remedies against Borrower … (ii) enforce Lender's rights against any collateral which shall ever have been given to secure the Loan … (iv) join Borrower or any other liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty, (v) exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Loan, or (vi) resort to any other means of obtaining payment of the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations")); *Swift & Co. v. Novotny*, 28 N.Y.S.2d 562, 563 (N.Y. Sup. Ct., Westchester County, 1941) ("A guarantee of payment is an absolute undertaking on the part of the guarantor that the principal will fully perform … On an absolute and unconditional guarantee of the nature involved herein, recourse may be had against the guarantor immediately upon default of the principal."); 63 N.Y. Jur. 2d Guaranty and Suretyship § 82 ("A guaranty of payment is not dependent upon any condition precedent other than the nonpayment of the indebtedness."). When the effect of the Bankruptcy and the independent nature of the Guaranty are considered, this factor does not support abstention. The Court should reconsider its contrary conclusion.

### (2) GUARANTOR IS NOT BEING FORCED TO LITIGATE IN TWO FORUMS

The Order also incorrectly concludes that, due to the existence of both this action and the Texas Action, Guarantor would be required to litigate in two forums. (Order, at p. 11). *Guarantor is not a party to the Texas Action (or the Bankruptcy), nor is Borrower a party to this action*. When viewed in the context of corporate separateness, a company in which Guarantor may have an ownership interest litigating in Texas does not mean that Guarantor himself is being forced to litigate the same issues in multiple forums. Borrower has its own counsel in Texas, and Guarantor has separate counsel in this action. The judicial system would fall apart if it were to disregard corporate separateness and find it inconvenient for an individual to have to litigate in a forum different from one in which a company he or she may have ownership in is litigating. Corporate separateness exists for a reason, New York law respects that, and that separateness dictates a finding that Guarantor is not being forced to litigate in two forums. *See Highgate LTC Mgmt., LLC*, 69 A.D.3d at 187, 887 N.Y.S.2d at 300; *In re Stage Presence, Inc.*, 592 B.R. at 302; *Beck*, 394 F. Supp. 2d at 637–38.

### (3) PIECEMEAL LITIGATION IS NOT A RISK BECAUSE THE ACTIONS INVOLVE SEPARATE AND DISTINCT CLAIMS

As the Court observed in its Order, "maintaining *virtually identical* suits in two forums … would waste judicial resources and invite duplicative effort." (Order, at p. 12, citing *Sitgraves*). But as noted above, this action and the Texas Action (and Bankruptcy) are separate and distinct actions, involving separate and distinct documents, obligations and defaults.

Under its Loan Documents, the Guaranty and applicable law, Lender bargained for and is entitled to pursue Borrower, Guarantor, and the Property in any sequence it deems appropriate. The Guaranty specifically provides, in Section 1.1, that "Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary

obligor." Section 1.6 of Guaranty further provides that "[i]t shall not be necessary for Lender (and Guarantor hereby waives any rights which Guarantor may have to require Lender), in order to enforce the obligations of Guarantor hereunder, first to (i) institute suit or exhaust its remedies against Borrower … (ii) enforce Lender's rights against any collateral which shall ever have been given to secure the Loan … (iv) join Borrower or any other liable on the Guaranteed Obligations in any action seeking to enforce this Guaranty, (v) exhaust any remedies available to Lender against any collateral which shall ever have been given to secure the Loan, or (vi) resort to any other means of obtaining payment of the Guaranteed Obligations. Lender shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations." New York law enforces such agreements. *See In re Hypnotic Taxi LLC*, No. 15-43300 (CEC), 2018 WL 3339580, at *5 (Bankr. E.D.N.Y. July 5, 2018) ("Given these provisions [stating that Citibank has 'no obligation to marshal any Collateral in favor of ... Guarantors'], and [guarantors'] waiver of defenses under the terms of the guaranties, the argument that Citibank's judgment must be reduced because it did not mitigate its damage should be rejected. *See A.T. Clayton & Co. v. Hachenberger*, 920 F. Supp. 2d 258, 268-69 (D. Conn. 2013) (guarantor's defense that the plaintiff failed to mitigate its damages was rejected because the guaranty was absolute, and specifically waived any requirement of the plaintiff to 'take any action or exhaust any right against the [d]ebtor or any .... collateral') … .").

While the Court notes that Lender "may" recover the full *principal* amount in the Texas Action, Lender is entitled to recover under the Guaranty *all* amounts due and owing to it, including interest, default interest, other charges authorized by the Loan Documents and attorneys' fees. In any event, with the Texas Action indefinitely stayed in favor of the

Bankruptcy, the relevant proceeding regarding Lender's likelihood of recovering in full is the Bankruptcy.

In the Bankruptcy, Borrower's purported plan of reorganization does not propose a concrete or feasible plan for how Lender will be repaid everything it is owed.[6]  Even if Borrower had done so, lenders are always allowed to pursue other obligors on any given debt, including guarantors, even if one of the borrowers or other obligors has commenced a bankruptcy proceeding. *See In re S. Side House, LLC*, 470 B.R. at 676; *Schumacher*, 429 B.R. at 406. Ultimately, the existence of the Bankruptcy and the chance that Lender may obtain some recovery in the Bankruptcy does not create a risk of piecemeal litigation given that the Guaranty is a separate and distinct obligation of Guarantor, unaffected by the Bankruptcy.

### (4)  THE INDEFINITE STAY OF THE TEXAS ACTION WEIGHS AGAINST ABSTENTION

While the Texas state court had heard several motions and entered several orders prior to the filing of this action and the underlying Motion, the Texas Action is now indefinitely stayed. There will be no further progress in the Texas Action and no risk of inconsistent rulings.  While there has been a substantial amount of activity in the subsequently-filed Bankruptcy, none of that activity involves Guarantor or the Guaranty.  As such, the Court should have found that this factor weighs against abstention: the state court presiding over the Texas Action now has no jurisdiction.  Having none, the principles of comity do not apply.

---

[6] In April 2020, Borrower filed its Plan of Reorganization (*see* Bankruptcy, at Dkt. No. 112) and its Disclosure Statement (*see* Bankruptcy, at Dkt. No. 113).  Those documents reveal that Borrower has no concrete plan for repaying Lender, let alone doing so immediately (as Lender is entitled given the fact that the debt has matured). Instead, Borrower suggests several broad categories of ways it *might* repay Lender, such as cash proceeds from leasing, cash proceeds from refinance, cash proceeds from sale, or payments over time.  None of those offer any reasonable assurance that Lender will be repaid in full in a timely manner.

74613354.6

**(5)**    **REGARDLESS OF WHICH LAW PROVIDES THE RULE OF DECISION, ONLY THIS COURT WILL BE ASKED TO RESOLVE THE RIGHTS AND OBLIGATIONS THAT RUN BETWEEN LENDER AND GUARANTOR**

In the Order, the Court correctly observed that New York state law governs Lender's claims under the Guaranty. (Order, at p. 13). But the Court erroneously conflated the rights of Lender and *Borrower*, which would have been resolved in the Texas Action if not for the Bankruptcy, and the rights of Lender and *Guarantor*, which are not at issue in the Texas Action or the Bankruptcy. While the Court correctly concluded that *this* action "revolves around the state-law rights" of Lender and Guarantor, the Court failed to acknowledge that those rights are not the subject of any other proceeding; in other words, ***there is no other action to "abstain" in favor of that is going to resolve the rights of Lender and Guarantor as they relate to the Guaranty***. Accordingly, the Court should have found that this factor weighs against abstention.

**(6)**    **THE STATE COURT PROCEEDING HAS BEEN STAYED INDEFINITELY AND THERE IS NO PROSPECT OF A COMPLETE AND PROMPT RESOLUTION, WHICH PREJUDICES LENDER'S RIGHTS**

As an additional basis for the Court's correct conclusion that the sixth *Colorado River* factor weighs against abstention, the indefinite stay of the Texas Action strongly favors this Court retaining jurisdiction and denying a stay. With respect to this last *Colorado River* factor, the United States Supreme Court has observed that "[w]hen a district court decides to dismiss or stay under Colorado River, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. *If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.*" *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28, 103 S. Ct. 927, 943, 74 L. Ed. 2d 765 (1983) (emphasis added). The Second Circuit has followed that guidance, finding it an abuse of discretion when the Court stays a federal action in

favor of a state court action that will "languish" for years. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 103 (2d Cir. 2012).

Here, in light of the indefinite stay of the Texas Action, there is a substantial risk – if not a certainty – that the Texas Action, even if it did involve the same or similar claims, will in fact "languish" for years with no hope of a resolution.  Accordingly, the Court should have concluded that this factor, standing alone, warranted denying the Motion and retaining jurisdiction.

## CONCLUSION

In its Order, the Court, critically, failed to acknowledge the existence of the Bankruptcy and the significant impact it had on the Texas Action – namely, staying it indefinitely.  Even if the Bankruptcy had not been commenced, the Order improperly conflates Guarantor and Borrower and fails to draw any distinction between the claims at issue here – between Lender and Guarantor – and the claims at issue in the Texas Action – between Lender and Borrower.  That key distinction, and the legal distinction between claims on a guaranty and claims on a related promissory note, dictates that a stay is inappropriate.  Under no circumstances was the Texas Action ever going to resolve the claims between Lender and Guarantor under the Guaranty (nor will the Bankruptcy do so).

In light of the above, Lender respectfully requests that the Court reconsider and vacate its Order, deny the Motion, and allow this case to proceed towards a prompt and efficient resolution.

Dated: New York, New York
September 2, 2020

POLSINELLI PC

By:  */s/ Bradley R. Gardner*
Jason A. Nagi
Frank T. Spano
600 Third Avenue, 42nd Floor
New York, New York 10016
(212) 684-0199
Fax No. (212) 684-0197
jnagi@polsinelli.com
fspano@polsinelli.com

- and -

Brett D. Anders (*pro hac vice* to be submitted)
Bradley R. Gardner
900 West 48th Place, Suite 900
Kansas City, Missouri  64112
(816) 753-1000
banders@polsinelli.com
bgardner@polsinelli.com

ATTORNEYS FOR LENDER

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of September, 2020, a true and correct copy of the

foregoing *Memorandum of Law in Support of Lender's Motion for Reconsideration* was filed

with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic

Filing to the following counsel of record:

Mitchell C. Shapiro
MCShapiro Law Group PC
15 Cutter Mill Road, Suite 207
Great Neck, New York 11021
mcshapiro@clm.com
*Attorneys for Defendant*

*/s/ Bradley R. Gardner*