UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ATX DEBT FUND 1, LLC,
       Plaintiff,

    -v-

NATIN PAUL, *a/k/a Nate Paul*,
       Defendant.

---

19-CV-8540 (JPO)

ORDER

J. PAUL OETKEN, District Judge:

  Defendant and Counterclaimant Natin Paul ("Paul") moves for reconsideration of this Court's order dismissing his counterclaims against Plaintiff and Third-Party Defendant ATX Debt Fund 1, LLC ("ATX"). (ECF. No. 154.) ATX is a mortgagee which lent to one of Paul's real estate companies. After that company defaulted on the mortgage, ATX sought recovery from Paul by enforcing his personal guaranty of the mortgage. The parties have been involved in litigation regarding foreclosure on a parcel of real property (the "Property") located in Austin, Texas for almost five years. (ECF No. 1.) After ATX sued him, Paul responded by raising contract and quasi-contract counterclaims, alleging, *inter alia*, that ATX engaged in a fraudulent loan to own scheme, which infected their entire course of dealing and bargaining, and then further committed fraud on the bankruptcy court while engaging in a "rigged" foreclosure process. (*See* ECF No. 49.) Though the theories of liability were different, the theory of injury is the same for all counterclaims: ATX's fraud injured Paul by causing the Property to be foreclosed on at a price below its true valuation — the difference between the $53 million it sold for and the $90 million value repeatedly claimed by Paul. (ECF No. 49 ¶¶ 26 – 87.)

  On March 21, 2023, the Court dismissed Paul's counterclaims with prejudice because he raised substantially all of the same arguments in the prior bankruptcy action as well as on appeal

1

to the District Court for the Western District of Texas. Both the Bankruptcy Judge and the District Judge sitting in review rejected the same arguments. With the same arguments before it, this Court first framed the key question for assessing collateral estoppel as an inquiry into whether "each of the counterclaims is premised on Paul's allegation that the Property [was] worth more than $53 million," the amount it received at foreclosure. (ECF No. 154 at 11.) If the Court agreed with the "[t]wo federal courts — one bankruptcy court and one district court sitting in review" — which had "examined the issue of valuation and determined that the Property was not worth more than $53 million," then Paul could not allege harm. (*Id.* at 11 – 12.) The Court did agree with those prior determinations and dismissed the counterclaims. Now, Paul moves the Court for reconsideration. (*See* ECF No. 154.)

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011) (citation and quotations omitted). To prevail, the movant must demonstrate either (i) an intervening change in controlling law; (ii) the availability of new evidence; or (iii) the need to correct clear error or prevent manifest injustice. *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 580–81 (S.D.N.Y. 2013) (citation omitted); *see also Cioce v. County of Westchester*, 128 Fed. App'x 181, 185 (2d Cir. 2005).

Paul does not challenge the Court's application of federal collateral estoppel in its prior opinion, the analysis of which is supported by a recent Second Circuit decision. *See Phoenix Light SF Ltd. v. Bank of N.Y.* Mellon, 66 F.4th 365, 366 (2d Cir. 2023). In *Phoenix Light,* the Second Circuit used the same issue preclusion test as this Court used, based on the core view that the doctrine "bars relitigation of an issue when (1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded . . . had a full and fair opportunity to litigate the issue in the prior action." *Id.* (internal citations omitted).

2

On that basis, the *Phoenix Light* court affirmed two orders applying collateral estoppel for essentially the same reason the Court applied it in this case.

At issue in *Phoenix Light* was the preclusive effect of a factual determination that a class of plaintiffs, who had purchased their claims from others via a litigation finance market, lacked requisite injury under New York law to satisfy the injury inquiry of prudential standing. In a 2014 case involving mortgage-backed securities, Judge Broderick had determined that these claim assignees, asserting third parties' rights as plaintiffs, lacked prudential standing under New York law because their litigating behavior was illicit "champerty," defeating prudential standing because no plaintiff could allege injury-in-fact. *See Phoenix Light SF DAC v. U.S. Bank Nat'l Ass'n*, 3032 WL 4515256, at *2 (2d Cir. Oct. 4, 2021). Then, in subsequent actions, Judge Caproni and, later, Judge Koetl applied issue preclusion as to prudential standing against non-parties to the first suit, recognizing that, like Paul, they were sufficiently in "privity" for collateral estoppel purposes to bind them because, as here, their interests were "adequately represented." The Second Circuit affirmed. *See Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 2022 WL 92213 (S.D.N.Y. Jan. 7, 2022) (Caproni, J.), *aff'd*, 66 F.4th at 366; *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr.*, 585 F. Supp. 3d 540, 588 (S.D.N.Y. 2022) (Koetl, J.), *aff'd*, 66 F.4th at 366. All three courts decided that a fact determination of lack of any cognizable injury barred repetitive litigation — decisions parallel to the Court's decision dismissing Paul's counterclaims for lack of injury. There, as here, "the district court was permitted to consider the affirmative defense of issue preclusion — even issue preclusion of . . . prudential standing — in accordance with the 'strong public policy in economizing the use of judicial resources by avoiding relitigation.'" *Phoenix Light*, 66 F.4th at 373. Paul offers no basis for questioning the doctrinal application of issue preclusion

Paul also highlights several peripheral issues in the Court's opinion, none of which merit reconsideration. First, Paul argues that under New York law it is appropriate to consider ATX's $90 million bid made at an unsuccessful foreclosure sale, such that that the Court failed to determine the fair market value at the time of sale. Paul argues that this is necessarily the case because the bid came in the six-month period between the Bankruptcy Court's opinion lifting the stay and the actual foreclosure on the Property. (ECF No. 154-1 ("Motion for Recon." or simply "Mot.") at 4.) This is factually false: The Bankruptcy Court was aware of the bid and confirmed the foreclosure action; the appeal of that order taken to the District Court was resolved well after the final foreclosure sale of the Property. The court rejected this argument as unpersuasive. There is nothing new here compelling a different result.

Paul next seizes on the Appellate Division's decision in *Trustco Bank v. Gardner*, 274 A.D.2d 873 (3d Dep't 2000), to couch his argument that the Court "incorrectly reasoned" that evidence of ATX's previous foreclosure bid could not, alone, provide a basis to cast aside the holdings of the Bankruptcy Court. (Mot. at 8 n.2.) First, *Trustco* is irrelevant. It concerns determination of fair market value in New York and bankruptcy under New York law, but this was a federal bankruptcy which took place in the Western District of Texas. Moreover, *Trustco* is entirely consistent with the Court's opinion. That case stands for the principle that when an unconsummated bid confirms the valuation of a party's experts and documentary evidence, it is not reversible error for a New York court to also consider the amount of the unconsummated bid. 274 A.D.2d at 874. Here, the Bankruptcy Court determined that Paul failed to present evidence of valuation using a judicially accepted calculation methodology, and at no point has Paul challenged that conclusion. *Trustco* does not undermine this Court's analysis.

In a lone paragraph, Paul also offers a laundry list of unexplained additional factual events that render the 2020 valuation is no longer binding.[1] Unlike his arguments about ATX's own unconsummated $90 million bid, which Paul raised in his prior briefing, all of these arguments, as Paul acknowledges, are new. The Court need not consider these arguments because they were forfeited. *See Albury v. J.P. Morgan Chase*, 2005 WL 1653939, at *3 (S.D.N.Y. July 14, 2005) (Pitman, M.J.) ("Except where a movant is relying on *new facts that could not have been previously discovered* or *newly promulgated law*, additional facts or new legal theories cannot be asserted by way of a motion for reconsideration." (emphasis added)). All of these "new" facts occurred in 2021 or before, meaning that they were readily available to Paul when he briefed the motion to dismiss the counterclaims. They cannot provide a basis for reconsideration. *See Polsby v. St. Martin's Press, Inc.*, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (rejecting motion for reconsideration that "treat[ed] the court's initial decision as the opening of a dialogue in which that party may then use such a motion to advance new theories or adduce new evidence in response to the court's rulings.")

Paul next argues that "[e]ven if the bankruptcy court's valuation is binding on this action, it does not preclude defendant's counterclaims" because Paul could seek compensatory damages of $1. (Mot. at 11.) Paul does not challenge the Court's legal statement that a complaint sounding in contract must plead cognizable on-contract injury stemming from breach to state a claim in New York. (ECF No. 110 at 15.) Given that, this argument also fails. If Paul is estopped from contesting that the Property was accurately and truthfully priced and sold at the

---

[1] Paul argues, for example, that "the Austin . . . real estate market had greatly increased in value during the first half of 2021" especially because it had been deflated due to a "2021 winter storm" which shut down Austin's power grid "for weeks" and "demonstrated the great value of the Property's attendant power plant and underground tunnels." (Mot. at 3.)

market value price of $53 million, then the so-called "rigged" transactions could only be *large financial windfalls running to Paul's benefit.* Paul's response, seeking to draw a distinction between injury and harm, is unpersuasive. (Mot. at 14.) If Paul cannot prove that he lost money, which he is collaterally estopped from claiming, he was neither injured nor harmed.

Finally, Paul argues that the Court's ruling conflicts with two New York state courts in similar cases involving Paul. (Mot. at 16.) All of these arguments could have been raised prior to reconsideration, so they are forfeited. In any event, this assertion is also erroneous. First, there is no inherent conflict because this Court was applying federal collateral estoppel principles, while Paul relies on New York law. This argument is therefore not cognizable as briefed. Second, Paul misstates the holdings of the New York courts. In fact, the First Department's decision affirmed the dismissal of all of Paul's (indistinguishable) counterclaims, save *only* those "based on fraudulent conduct that [allegedly] occurred after the execution of the guaranties." *ATX Debt Fund 2, LLC v. Paul*, 206 A.D. 3d 465, 465 (1st Dep't 2022). Third, there is also no conflict because no New York court has yet reached the issue of collateral estoppel. Instead, the lines quoted by Paul pertain to an unrelated issue in this case, since they rejected a waiver argument that ATX did not make here. Fourth, there is no conflict because the New York state decisions and this Court's decision in a case with different contracting parties, different mortgages, liens on different properties, and different times.

In any event, the Court also provided an express alternative holding, not based on issue preclusion, dismissing Paul's fraud claims as failing to state a claim. This provides an independent basis to deny reconsideration.[2] (*See* ECF No. 110 at 18 n.8.) It remains the case

---

[2] To reiterate, Paul's post-contractual fraud allegations "are insufficient as a matter of law irrespective of issue preclusion" since such a claim "will lie only where a party has submitted false or forged documents or conduct that might be thought to corrupt the judicial process itself, as where a party bribes a judge," and there is no allegation of this nature here. (ECF No. 110 at

6

that all of Paul's allegations supporting post-contractual fraud claims remain "a series of question-begging and tautological assertions" that amount to "no more than complaints that the [creditors] disputed the [debtor]'s version of law and facts," which is "exactly what is expected in the normal adversary process." (*Id.* at 18 – 19 (quoting *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 95 – 96 (2d Cir. 2002)).

Having reviewed the record and the parties' memoranda of law, the Court concludes that it overlooked neither a controlling issue of law nor a crucial fact in the record. Plaintiff's motion to reconsider is therefore DENIED.

The Clerk of the Court is directed to close the motion at ECF Number 154.

SO ORDERED.

Dated: June 28, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

18 n.8 (quoting *Weldon v. United States,* 225 F.3d 647, 647 (2d Cir. 2000)). Paul does not challenge this portion of the Court's opinion.