

July 5, 2023

**<u>BY ECF</u>**
Honorable J. Paul Oetken, United States District Judge
United States District Court, Southern District of New York
40 Foley Square
New York, New York 10007

*Re: ATX Debt Fund 1, LLC v. Paul, 19-cv-08540 (JPO) (S.D.N.Y.)*

Dear Judge Oetken:

As counsel for Defendant Natin Paul in the above-referenced action, I write to respectfully request that the Court reconsider and modify the orders that granted Plaintiff ATX Debt Fund 1, LLC ("ATX1")'s motion to dismiss Defendant Paul's counterclaims (CM/ECF ECF No. ["ECF No."] 110, "MTD Order"), and denied Defendant's motion to reconsider and reargue the dismissal (ECF No. 199, "Reconsideration Order"), based on the Court's apparent misapprehension of key facts that led to clear, reversible errors in those prior orders, such as the erroneous conclusion that the May 4 and June 1, 2021 rigged foreclosure sales in question were supervised, administered and approved by the bankruptcy court. *In fact, the foreclosures in question were non-judicial foreclosures, and were not supervised or administered by the bankruptcy court. Moreover, the hearings before the bankruptcy court took place in November 2020 (leading to the rejection of the borrowers' reorganization plan and lifting of the automatic stay of the non-judicial foreclosure) and on the morning of March 4, 2021 (denial of emergency motion to reinstate stay and reorganization plan based on ATX1's continuing misrepresentations of value of Property), BEFORE the first non-judicial auction at which ATX1 itself bid $90,000,000 AND then had its "substitute trustee" invalidate the winning $90,500,000 third-party bid and the May 4, 2021 auction and then suppressed all competitive bidding and took the properties in question for "credit bids" that were unconscionably lower than the actual market value on June 1, 2021.* Alternatively, Defendant Paul respectfully requests that the Court certify the key controlling issue of law presented on both motions and erroneously determined by both Orders to the Second Circuit Court of Appeals for an interlocutory appeal under 28 USC §1292(b) on an expedited basis so that a motion seeking interlocutory appeal may be made to the Court of Appeals as required by Friday, July 7, 2023 (10 days after the June 28, 2023 denial of the motion for reconsideration/reargument), and within the time to file a notice of appeal of both orders following the denial of the timely filed second motion.

The issue presented on Defendant Paul's counterclaims – the market value of the property on the date of foreclosure – was not identical to that previously determined by the bankruptcy court in November 2020 and there was no opportunity to bring those new facts to the bankruptcy court, or to the district court hearing the appeal of the determination, which review was limited to the factual record before the bankruptcy court in November

THREE GRACE AVENUE, SUITE 100· GREAT NECK, NEW YORK 11021
TEL.: 917.446.3628 FAX: 646.304.7555 EMAIL: MCS@MCSHAPIROLAW.COM .LINKEDIN.COM/IN/MITCHELLCSHAPIRO






2020 (and the Bankruptcy Court's March 4 denial of the emergency motion to reinstate the stay and accept DIP financing based on the conclusion that "it doesn't sound like the lender [ATX1] wants the money [and the refinancing proposal from the new lender] has many, many conditions, and the lender [ATX1] is opposed. It's simply too contingent and too late". In Re Silicon Hills Campus, LLC, Debtor, US Bankruptcy Court, WD Texas, Case NO. 20-10042, ECF #357. Both of this Court's Orders in question are based on the erroneous factual finding that "[t]he Bankruptcy Court was aware of the bid and confirmed the foreclosure action" (ECF No. 199 at 4), when these were non-judicial foreclosures. The Court incorrectly found that "the [bankruptcy] court rejected this argument as unpersuasive and [concluded that] "[t]here is nothing new here compelling a different result." (*Id.*) To the contrary, the facts surrounding ATX1's identity as a competing real estate developer – not a lender – and that it already had internal plans to develop the Property, with evaluations of the value of property in excess of $140,000,000, at the time that it was representing to the bankruptcy court that the value was only $53,000,000, and the fact that ATX1 itself had bid $90,000,000 on May 4, 2020 and then invalidated the third party bidder's winning $90,500,000 bid and auction and suppressed all competitive bidding for the subsequent June 1, 2021 foreclosure sale were NEVER presented to, let alone considered by, the Bankruptcy Court or the Texas District Court (see ECF No. 69-1, 69-2, 69-3, 69-4, 69-5, 69-6, 69-87, Texas Court documents). This Court thus failed to apply the controlling law, set forth most recently in *Phoenix Light SF Ltd. v. Bank of N.Y. Mellon*, 66 F.4th 365, 366 (2d Cir. 2023), as "(1) the identical issue [was not] necessarily was decided in the prior action and is [not] decisive of the present action, and (2) the party to be precluded . . . [did not have] a full and fair opportunity to litigate the issue in the prior action."

Respectfully, this Court also erred in finding that the determination of market value in November 2020 was "decisive" of the present action and holding the *Trustco Bank v. Gardner*, 274 A.D.2d 873 (3d Dep't 2000) opinion "irrelevant" (ECF No. 199 at 4). The loan documents, including the guaranty in question, provide that New York law applies (*see* ECF No. 69-11, Guaranty, §6.3), and *Trustco* provides that, under New York law, it is "the fair and reasonable market value of the mortgaged premises as of the date such premises were bid in at auction" – not more than 5 ½ months prior – that is determinative in such an action. *Trustco*, 274 A.D.2d at 873-874 (citing *Columbus Realty Investment Corp. v Gray*, 240 A.D.2d 529, 530 [2d Dept 1997]). Unlike the cases previously before those New York appellate courts, there is in fact evidence here (which was not presented to the Texas bankruptcy court or affirming district court because it had not yet occurred) that "warrant[s] the court to set aside the foreclosure sale" (*Canterbury*, 240 A.D.2d at 530). Moreover, under both *Trustco* and *Columbus Realty Investment Corp.* -- where the court made the apt observation that "plaintiff's bid was commercially unreasonable since it had relied 'on a claim of a depressed market, yet six (6) months from now the opposite may be true'", an evidentiary hearing regarding the factual determination of the market value "at the time of the sale" is required *Id.* This Court also erred in concluding that Paul has not challenged the application of collateral estoppel to a determination of market value made by the bankruptcy court more than 5 ½ months prior to the non-judicial foreclosure sale, where a myriad of new facts – including ATX1's own internal valuations of the Property and $90,000,000 bid for the Property – could not have ever been presented to the prior





courts that made their determinations of market value long before the events transpired before and during the non-judicial foreclosure sale (and before the storm damages and insurance claims) occurred.

This Court also mistakenly found that Paul "misstates the holdings of the New York [state] courts" in the related case brought by ATX2's affiliate over the same loan to own scheme that encompassed additional properties, and in making the understandably erroneous conclusion that the "First Department's decision affirmed the dismissal of all of Paul's (indistinguishable) counterclaims save *only* those 'based on fraudulent conduct that [allegedly] occurred after the execution of the guaranties'". (ECF No. 199 at 6, emphasis in original). In fact, there were no other counterclaims dismissed by the lower court or the appellate division in that case (in which the undersigned has been counsel of record since inception). As the Hon. Justice Andrew Borrok noted in subsequent proceedings in that case, the ONLY counterclaim that had been presented to the appellate division on the initial interlocutory appeal in question sought a declaratory judgment that the lawsuit and enforcement of the guaranty was barred due to the lender's fraudulent conduct. *ATX Debt Fund 2, LLC v. Paul*, 2023 NY Slip Op 30809(U) (Sup. Ct, New York County 2023) (ECF No. 158-1 at 2). Justice Borrok subsequently interpreted the Appellate Division ruling as permitting the interposition of the same additional counterclaims at issue here, based on the existence of a carveout in the waiver language of the guaranty itself, which expressly carved out from the guarantor's waiver of defenses and claims against the lender – as does the guaranty here – "any act or omission constituting gross negligence or willful misconduct on the part of the Lender and/or its agents" (see ECF No. 69-12, Guaranty at 10, §2.14); see *ATX Debt Fund 2, LLC v. Paul*, 2023 NY Slip Op 30809(U) (Sup. Ct, New York County 2023) (ECF No. 158-1 at 2, 03/16/2023 order memorializing 03/15/23 findings and rulings ("[t]his carveout provision negates the waiver of the guaranties with respect to, among other things, post-closing claims or defenses sounding in fraud . . [and] for acts or omissions constituting gross negligence or willful misconduct"). In the appellate division opinion, when faced only with a single counterclaim found that "allegations in the amended answer [which described the same loan to own scheme as in the instant counterclaims] are sufficient to state the fraud-based affirmative defenses as well as the counterclaim for a declaration that this action is fraudulent, within the scope of the waiver carveout." *ATX Debt Fund 2, LLC v. Paul*, 206 A.D.3d 465 (1st Dept 2022). (The AD1 opinion's failure to cite to the exact waiver carveout does make it confusing to a casual observer. However, the undersigned has litigated both cases since inception, and Justice Borrok clarified that the guaranty waiver's carveout would include both the fraud counterclaim before the appellate division and all of the additional counterclaims alleged in the Second Amended Answer in that case, which are the same as those interposed here, and both guaranties have the identical waiver carveout language. (see ECF No. 158-1 at 2; ECF No. 158-2, 03/15/2023 transcript (at 19, 28: "now able to assert claims that also fall within the waiver carveout provision that the Appellate Division said that he could articulate … we're going to see whether or not there was activity that falls within the waiver carveout or not");). Paul indeed made the same argument here with respect to the counterclaims -- that rest on the same loan to own scheme and rigged foreclosure sales that the First Department found supported a fraud claim and fit within the waiver carveout, and which Justice Borrok then cited as justifying an amended pleading with additional defenses and counterclaim --






citing the same waiver carveout provision (§2.14) seven different times in its opposition brief on the motion to dismiss (ECF No. 85 generally; see e.g. at 12, section entitled "*The Acts Of The Lender Fall Within The Waiver Carveout of Section 2.14*") and making the same arguments about the unenforceability of a waiver of claims sounding in fraud or gross negligence under controlling New York law (see ECF No. 85 at 12-15, ECF No. 154-1 at 8-10).

In the counterclaims, Paul alleged (and has now adduced evidence – which will be presented at an evidentiary hearing) that the "predatory lender" (third party defendant Karlin) first hid behind the original lender and its counsel in bankruptcy proceedings and then behind a shell company (ATX1) so as to buttress the credibility of its positions with the bankruptcy judge, and to not reveal its true identity and its intention to take the Property for itself, valued the Property at more than $140,000,000 while having the original lender and then its shell company represent that the Property was not marketable and worth only $53,000,000 to the bankruptcy court (yet again acknowledging internally that the Austin, Texas real property market had already rebounded), and where ATX1 itself subsequently bid $90,000,000 for the Property and then invalidated the non-judicial foreclosure auction and rejected the higher bid so as to enable it to call a new non-judicial auction at which it took the Property for a $53,000,000 credit bid after eliminating all competitive bidding. Permitting the dismissal of the counterclaims, and applying collateral estoppel regarding the bankruptcy court's November 2020 determination of market value would be the exact type of "clear error" and "manifest injustice" that the Second Circuit has held warrants the grant of a motion for reconsideration. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,* 729 F.3d 99, 104 (2d Cir. 2013).

Should this Honorable Court decline to reconsider the prior Orders and to modify them so as to deny Plaintiff's motion to dismiss the counterclaims, Defendant Paul respectfully requests that the Court modify the orders so as to certify the following questions for interlocutory appeal to the Second Circuit:

*1) Is a Bankruptcy Court's November 2020 order, confirmed by District Court Order dated February 2022 based on the November 2020 record, which determined the fair market value of the subject real property in November 2020 when deciding to reject the property owner debtor's plan of reorganization through refinancing and to lift the automatic stay in bankruptcy with respect to the lender's non-judicial foreclosure of the real property, to be afforded collateral estoppel with respect to the fair market value of the same real property on June 1, 2021 – the date of the non-judicial foreclosure sale of that real property -- in connection with a guarantor's counterclaims (in an action seeking the entire amount of the indebtedness from the guarantor) that are based part on allegations of intervening events and changes in the market and the value of the property and acts by the auctioning party during the 5 ½ plus months between the Bankruptcy Court determination and the date of the non-judicial foreclosure sale?*

*2) Did the Court err in finding that, for collateral estoppel purposes, the "identical issue" had been determined by the Bankruptcy Court when it made a valuation of the Property in November 2020, and held that there was no "intervening factual change" and*





*circumstances material to the prior decision had not changed in the 5 ½ months thereafter before the June 1, 2021 non-judicial foreclosure sale – despite evidence that the lender's rights had been purchased by a competing real estate developer that hid its acquisition of the lender's rights to the loan in question from the bankruptcy court and the public, that the developer itself had made a bid for the same property at another non-judicial foreclosure in May 4, 2021 at a price much higher than the November 2020 valuation and the June 1, 2021 credit bid for which it "won" the non-judicial foreclosure of the property, that the developer had actively suppressed all competitive bidding for the real property prior to the June 1, 2021 non-judicial foreclosure sale, that the Austin Texas real estate market had already begun to recover from the pandemic between December 2020 and June 2021, and that the winter storm that knocked out power for weeks in February 2021 had demonstrated that the self-contained power plant and underground tunnels connecting the various buildings on the 158+ acre real property had great value (when the expert report accepted by the bankruptcy court in November 2020 placed no value on those amenities)?*

*3) Did the Court err when it granted Plaintiff's motion to dismiss all of the counterclaims, with prejudice, by order dated March 21, 2023 (ECF No. 110) -- where the loan guarantor's counterclaims contained common factual allegations that described a "loan to own scheme" by a "predatory lender" that created the borrowers' defaults, made misrepresentations to the bankruptcy court regarding the real party in interest and the value of the Property, and then conducted "rigged foreclosure sales" to seize real property and manufacture an artificial deficiency to collect from the guarantor -- based on the Court's conclusion that all counterclaims depended upon the credit bid being lower than the market value of the property?*

*4) Did the Court abuse its discretion when it issued its order dated June 28, 2023 (ECF No. 199) and denied Plaintiff's motion seeking reargument and reconsideration of the dismissal of the counterclaims without considering evidence of the fair market value of the property on the date of the foreclosure (despite the guaranty's New York choice of law provision and the New York appellate division opinions stating that the value on the date of foreclosure must be determined in deficiency actions), and without considering evidence of the guarantor's allegations of willful misconduct, gross negligence and fraudulent acts by the Plaintiff and its predecessor lender as part of the alleged "loan to own scheme"?*

Interlocutory review of the Orders based on these certified questions, likely would eliminate the anticipated motions to dismiss the Third Party Complaint by the 18 Third Party Defendants on the same grounds, and would inform the parties and the Court with respect to the ATX1 motion for summary judgment yet to be fully briefed, and the scope of further discovery, if any, to be conducted. The undersigned is generally available any time today, tomorrow or Friday morning should the Court wish to convene a teleconference on this matter.

Respectfully Submitted,

Mitchell C. Shapiro

cc: All counsel of record (via ECF)