UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————
ATX DEBT FUND 1, LLC,

                           Plaintiff,

                -v-

NATIN PAUL, *also known as Nate Paul*,
                          Defendant.
———————————————————————

19-CV-8540 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiff ATX Debt Fund 1, LLC ("ATX") maintains this action against Defendant Natin Paul ("Paul") for breach of a loan guaranty that he signed. ATX now moves for summary judgment against Paul and seeks enforcement of the terms of that guaranty. For the reasons that follow, ATX's motion for summary judgment is granted.

**I.    Background**

    **A.    Factual Background**

    The following facts are drawn from ATX's Local Rule 56.1 Statement (ECF No. 163 ("Pl.'s SOF")), Paul's Opposition to ATX's Rule 56.1 Statement and Paul's own Rule 56.1 Statement (ECF No. 204-1 ("Def.'s SOF Opp.")), and ATX's Opposition to Paul's Rule 56.1 Statement (ECF No. 225 ("Pl.'s SOF Opp.")). The facts recited here are undisputed unless otherwise noted, and they are construed in the light most favorable to the nonmovant.

    In February 2018, Ladder Capital Finance, LLC ("Ladder Capital") entered into a loan agreement ("Loan") with Silicon Hills Campus, LLC ("Borrower") in the principal amount of $64,000,000. (Def.'s SOF Opp. ¶ 1; *see also* ECF No. 165-1.) That Loan was secured by a 158-plus acre piece of real property located in Austin, Texas (the "Property"). (Def.'s SOF Opp. ¶ 4.) In connection with the Loan, Paul entered into a Guaranty of Recourse Obligations (the

1

"Guaranty"), making Paul the Guarantor.  (*Id.* ¶ 11; *see also* ECF No. 165-3.)  Under that Guaranty, Paul "irrevocably and unconditionally guarantees to Lender and its successors and assigns" certain obligations, including the full payment of the debt in the event that Borrower commences bankruptcy proceedings or transfers the Property.  (Def.'s SOF Opp. ¶ 12; ECF No. 165-3 § 1.1.)  As part of the Guaranty, Paul also "assumes liability as a primary obligor."  (Def.'s SOF Opp. ¶ 15; ECF No. 165-3 § 1.2.)  The Guaranty states that the Loan becomes fully recourse as to Paul if "Borrower files a voluntary petition under the Bankruptcy Code or any other federal, state, local or foreign bankruptcy of insolvency law," and if "Borrower fails to obtain Lender's prior written consent to any Transfer."  (Def.'s SOF Opp. ¶¶ 17-18; ECF No. 165-3 § 1.2(b)(5)-(6).)

In February 2018, Ladder Capital assigned the Loan to Tuebor REIT Sub LLC ("Tuebor").  (Def.'s SOF Opp. ¶ 25.)  In May 2019, Tuebor, Borrower, and Paul executed a First Amendment to the Loan that extended its maturity date to July 17, 2019.  (*Id.* ¶¶ 26-27.)  To secure the First Amendment, Paul promised payment of the debt when it was due, "provided, however, that Guarantor's liability under this clause (c) is limited to an amount equal to $3,000,000.00, plus any accrued and unpaid interest thereon, plus the full and prompt payment of all costs and expenses required under Section 1.8 [of the Guaranty]."  (*Id.* ¶ 28.)  In July 2019, Tuebor, Borrower, and Paul entered into a Second Amendment to the Loan that extended its maturity date to August 16, 2019 and provided an option to further extend the maturity date to August 30, 2019 under certain conditions.  (*Id.* ¶¶ 30-31.)  To secure the Second Amendment, Paul reaffirmed the Guaranty as amended.  (*Id.* ¶ 32.)

In June 2019, a mechanic's lien was filed against the Property in the amount of approximately $107,000.  (*Id.* ¶ 33.)  According to ATX, the Loan matured on August 30, 2019,

based on the terms of the Second Amendment (Pl.'s SOF ¶ 36); according to Paul, the relevant parties agreed to a Third Amendment to the Loan that extended the maturity date to December 2019 (Def.'s SOF Opp. ¶ 36). While the parties disagree on the maturity date of the Loan, both parties appear to agree that Paul did not pay the debt by the August 30, 2019 date. (*Id.* ¶ 38.) On August 30, 2019, Tuebor commenced an action in Texas state court, seeking the appointment of a receiver to take possession of and administer the Property. (*Id.* ¶ 39.) The Texas state court authorized the foreclosure to proceed. (*Id.* ¶ 40.)

On September 13, 2019, Tuebor filed this action. (*Id.* ¶ 41; ECF No. 1.) In January 2020, Borrower filed a petition for relief pursuant to the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas. (Def.'s SOF Opp. ¶ 42.) The filing of the bankruptcy petition automatically stayed Tuebor's action, including the foreclosure of the property. (*Id.* ¶ 45.) In October 2020, Tuebor moved to lift the automatic stay to allow the foreclosure to proceed. (*Id.* ¶ 46.) In November 2020, after the bankruptcy court conducted two days of evidentiary hearings that included testimony from expert witnesses and Paul himself, the court modified the stay to allow Tuebor to pursue its remedies under state law and to allow the foreclosure involving the Property to proceed in state court. (*Id.* ¶¶ 47-50; ECF No. 164-4 at 11.) That decision turned on the court's determination that Borrower had no equity in the Property, which was worth at most $53 million but was subject to debt "well in excess of 60 million dollars." (ECF No. 164-4 at 9.) To reach its conclusions, the bankruptcy court determined that Borrower's expert was "not credible," whereas Lender's expert was. (*Id.* at 5.)

In February 2022, the District Court for the Western District of Texas affirmed the bankruptcy court's order upon *de novo* review. (Def.'s SOF Opp. ¶¶ 54-55.) The district court concluded that the bankruptcy court "consider[ed] both appraisals"—Borrower's and Lender's—

3

"in arriving at the market value for the Property" and that it did not commit legal error by "disregard[ing] an appraisal that was not credible, not based on reasonable costs, and that did not employ proper methodology." (ECF No. 164-6 at 13-14.)

In the meantime, in December 2020, Tuebor assigned all right, title and interest under the Loan and the Guaranty to ATX. (Def.'s SOF Opp. ¶ 58.) In June 2021, ATX proceeded with a non-judicial foreclosure of the Property. (*Id.* ¶ 60.) ATX placed a credit bid for the property in the amount of $53,000,000. (*Id.* ¶ 61.) Although the parties contest whether the foreclosure sale was conducted properly, ATX's bid was the winning bid at the June foreclosure sale. (Pl.'s SOF Opp. ¶¶ 164-65.)

In June 2021, Borrower commenced an action in Texas state court alleging, among other things, wrongful foreclosure on the Property by ATX. (Def.'s SOF Opp. ¶ 63.) In December 2022, the Texas state court granted a motion by ATX for partial summary judgment. It concluded that collateral estoppel barred Borrower from relitigating whether the Property was sold at the foreclosure sale for an inadequate price, and as a result, dismissed Borrower's claim for wrongful foreclosure with prejudice. (*Id.* ¶ 65; *see also* ECF No. 162 at 8-9.) In September 2023, the Texas state court also granted summary judgment to ATX's affiliates, disposing of claims brought by Paul's companies for wrongful foreclosure, fraudulent filings, and conspiracy to defraud, among other claims. (*See* ECF No. 230.)

ATX represents that, as of June 1, 2021, after accounting for ATX's prevailing credit bid, Paul was liable to ATX for $27,511,687, plus attorneys' fees. (ECF No. 162 at 6.)

### B. Procedural History

Tuebor filed this action on September 13, 2019, seeking to enforce the terms of the Guaranty against Paul. (ECF No. 1.) Tuebor filed a second amended complaint on January 10,

4

2020, which remains the operative complaint.  (ECF No. 26.)  On August 19, 2020, the Court denied Paul's motion to dismiss and granted his motion to stay the case pending the resolution of certain state court proceedings in Texas.  *Tuebor Reit Sub LLC v. Paul*, No. 19-CV-8540, 2020 WL 4897137 (S.D.N.Y. Aug. 19, 2020) (ECF No. 28).  On July 12, 2021, based on the assignment of the loan to ATX, this Court granted a motion to substitute ATX as Plaintiff.  (ECF No. 44.)  The Court then lifted the stay of the case in February 2022 because the proceedings in Texas had substantially advanced.  *ATX Debt Fund 1, LLC v. Paul*, No. 19-CV-8540, 2022 WL 20053878 (S.D.N.Y. Feb. 14, 2022) (ECF No. 48).

On March 7, 2022, Paul filed an answer and counterclaims asserting breach of contract, breach of the implied duty of good faith and fair dealing, and common law and statutory fraud.  (ECF No. 49.)  The theory of Paul's counterclaims was that ATX committed fraud that injured Paul by causing the Property to be foreclosed on at a price below its true valuation.  On March 21, 2023, the Court granted a motion by ATX to dismiss Paul's counterclaims.  *ATX Debt Fund 1, LLC v. Paul*, No. 19-CV-8540, 2023 WL 2585714 (S.D.N.Y. Mar. 21, 2013) (ECF No. 110) ("*ATX 1*").  Paul's counterclaims were all premised on his allegation that the Property was worth more than $53 million, and the Court concluded that Paul was barred from relitigating that issue under the doctrine of collateral estoppel.  Specifically, the Court determined that the bankruptcy court and the District Court for the Western District of Texas had examined the issue of the Property's valuation, that the issue was actually litigated and decided, that Paul had a full and fair opportunity to litigate the issue, and that the issue of valuation was necessary to the bankruptcy court's final judgment.  *Id.* at *6-9 (ECF No. 110 at 11-18).  Accordingly, the Court dismissed Paul's counterclaims, and the Court later denied Paul's motion for reconsideration of

5

that dismissal. *ATX Debt Fund 1, LLC v. Paul*, No. 19-CV-8540, 2023 WL 4238910 (S.D.N.Y. June 28, 2023) (ECF No. 199).

On May 12, 2023, ATX moved for summary judgment. (ECF No. 161.) Paul filed an opposition on July 14, 2023 (ECF No. 204), and ATX filed a reply in support of its motion on August 11, 2023 (ECF No. 223). On September 19, 2023, ATX filed a letter informing the Court about the status of the relevant Texas state court proceedings. (ECF No. 230.)

## II.   Legal Standard

To survive summary judgment, a nonmovant must raise a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). To raise such an issue requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Moreover, a nonmovant "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted). Rather, they "must offer some hard evidence showing that [their] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). The movant can prevail if, after discovery, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant does produce evidence tending to exclude the possibility of a genuine dispute of material fact, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

## III.   Discussion

ATX moves for summary judgment on the ground that Paul breached the Guaranty and accordingly is liable to ATX for damages. Because there is no genuine dispute that Paul

breached the Guaranty, and because Paul has no colorable defense for that breach, the Court grants ATX's motion for summary judgment. The Court also rejects Paul's alternative request that the Court defer a decision on summary judgment until additional discovery is conducted, as fact discovery has been closed for months and Paul does not identify any necessary additional discovery.

### A.     Breach of Guaranty

To prevail on a motion for summary judgment to enforce a guaranty, a creditor must prove "an absolute and unconditional guaranty, the underlying debt, and the guarantor's failure to perform under the guaranty." *Gansevoort 69 Realty LLC v. Laba*, 130 A.D.3d 521, 521 (1st Dep't 2015) (internal quotation marks and citation omitted); *see also HSH Nordbank AG N.Y. Branch v. Street*, 421 F. App'x 70, 72 (2d Cir. 2011) (summary order). Because the Court concludes that ATX has proven each of those elements and that Paul has failed to create a genuine dispute of material fact related to any element, the Court grants summary judgment to ATX.

First, ATX submits uncontroverted evidence of an absolute and unconditional guaranty. The Guaranty provides that the "Guarantor hereby irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable," and it further provides that the "Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor." (ECF No. 165-3 § 1.1.) Neither the First Amendment nor the Second Amendment changed those terms. (Def.'s SOF Opp. ¶¶ 29, 32.)

Second, Paul does not dispute that he did not pay the Loan as of the August 30, 2019 maturity date. To be sure, Paul disputes whether August 30, 2019 was indeed the relevant

maturity date of the Loan, and instead asserts that Borrower and Lender agreed to a Third Amendment that extended the maturity date to December 2019.  (Def.'s SOF Opp. ¶¶ 36, 38.) No rational jury could find, however, that Borrower and Lender had actually agreed to a Third Amendment that extended the maturity date beyond August 30, 2019.  Paul introduces no evidence of a third extension, and he at most provides evidence demonstrating that the parties had discussed a third extension—but such discussion is insufficient to show that an amendment was executed.  (*See* Def.'s SOF Opp. ¶ 38.)  Moreover, the Loan Agreement states that "[n]o modification, amendment, [or] extension . . . of any provision of any Loan Document . . . shall in any event be effective unless the same shall be in a writing signed by the party or parties against whom enforcement is sought."  (ECF No. 165-1 § 11.4.)  Paul does not introduce any writing that satisfies that provision, and no reasonable factfinder could conclude that the maturity date was extended beyond August 30, 2019.  Indeed, based on characterizations largely similar to the ones Paul now presents, this Court previously concluded that "Paul does not allege that the third extension was anything but hypothetical" (ECF No. 110 at 7), and the District Court for the Western District of Texas similarly understood that no third loan extension existed (ECF No. 164-6 at 3).

Paul's nonpayment of the Loan by the maturity date triggered his obligations under the Guaranty.  (*See* ECF 165-1 § 10.1(a)(i) (specifying that an "Event of Default" occurs if "the payment of the Obligations due on the Maturity Date is not paid when due").)  Moreover, Borrower filed a petition for bankruptcy in January 2020 (Def.'s SOF Opp. ¶ 42), also triggering Paul's full liability under the Guaranty, which states that "the Obligations shall be fully recourse to Guarantor in the event that . . . Borrower files a voluntary petition under the Bankruptcy Code

or any other federal, state, local or foreign bankruptcy or insolvency law" (ECF No. 165-3 § 1.2(b)(6)).[1]

The language in the Loan Agreement and Guaranty shows that Paul is liable for Borrower's full obligations under the terms of the Loan. The Loan Agreement defines "Debt" as "the Outstanding Principal Balance together with all interest accrued and unpaid thereon and all other sums . . . due to Lender in respect of the Loan under the Loan Documents." (ECF No. 165-1 at S-I-5.) The Guaranty also provides that if the "Guarantor should breach or fail to timely perform any provisions of this Guaranty, Guarantor shall, immediately upon demand by Lender, pay Lender all costs and expenses (including court costs and reasonable attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder, together with interest thereon at the Default Rate from the date requested by Lender until the date of payment to Lender." (ECF No. 165-3 § 1.8.) Paul does not contest that guaranty provisions similar to the ones at issue here are regularly enforced in New York. *See, e.g.*, *Desiderio v. Devani*, 24 A.D.3d 495, 496-97 (2d Dep't 2005).

B. **Paul's Defenses**

Paul raises a mélange of defenses in his answer: (1) personal jurisdiction, (2) subject matter jurisdiction, (3) accord and satisfaction, (4) unclean hands, (5) equitable estoppel, (6) a dispute of whether ATX owns the Loan, (7) standing, (8) fraud, (9) breach of the implied covenant and duty of good faith and fair dealing, and (10) failure to mitigate damages. (ECF No. 49 ¶¶ 88-97.) Paul additionally appears to assert four new defenses in his opposition to the

---

[1] In addition to the nonpayment of the Loan and Borrower's filing of a petition for bankruptcy, a mechanic's lien was also placed on the Property. (Def.'s SOF Opp. ¶ 33.) ATX characterizes the filing of that lien as another event that "independently triggered Defendant's full recourse liability" under the Guaranty. (ECF No. 162 at 5.)

motion for summary judgment: (11) breach of contract, (12) promissory estoppel, (13) gross negligence, and (14) willful misconduct.  (*See* ECF No. 204 at 10, 12.)

All of Paul's defenses fail as a matter of law, as no rational jury could find facts to support any of the defenses in light of the waiver that Paul signed in the Guaranty and because those defenses fail on their merits.  Accordingly, Paul has not raised a genuine dispute of material fact that prevents this Court from granting summary judgment to ATX.

### 1. The Waiver in the Guaranty

To begin, Paul has waived his ability to raise many of the aforementioned defenses by signing a broad waiver in the Guaranty.  The Guaranty explicitly provides that the Guarantor, Paul, "waives any common law, equitable, statutory or other rights . . . in connection with . . . [a]ny renewal, extension, increase, modification, alteration or rearrangement of all or any part of the Guaranteed Obligations, the Note, the Mortgage, the Loan Agreement, the other Loan Documents or any other document, instrument, contract or understanding between Borrower and Lender or any other parties pertaining to the Guaranteed Obligations."  (ECF No. 165-3 § 2.1.)  The Guaranty also provides that Paul "waives any common law, equitable, statutory or other rights . . . in connection with . . . any sale, assignment or foreclosure of the Note, the Loan Agreement, the Mortgage, or any other Loan Documents or any sale or transfer of the Property."  (*Id.*)

Under those broad provisions, Paul waived his ability to bring the overwhelming majority of his asserted defenses.  Paul's defenses largely assert "rights . . . in connection with" either the "renewal [or] extension . . . of all or any part of the Guaranteed Obligations, the Note, the Mortgage, [and] the Loan Agreement," or the "sale or transfer of the Property."  For example, Paul's defenses of (3) accord and satisfaction and (10) failure to mitigate damages are premised

10

upon the claim that ATX "rigged" the foreclosure sale, but Paul waived his right to bring any claim related to that sale. (*See* ECF No. 204 at 16.) Similarly, Paul's defenses of (4) unclean hands, (5) equitable estoppel, (8) fraud, and (9) breach of implied covenant and duty of good faith and fair dealing appear to be premised on Lender's apparent misconduct in refusing to enter or honor a Third Amendment to the Loan Agreement, but claims related to such alleged misconduct also fall squarely within the waiver.[2]

Paul contends that Section 2.14 of the Guaranty preserves his ability to assert defenses based on allegations of "gross negligence or willful misconduct on the part of Lender and/or its agents." (*See* ECF No. 204 at 3-4; ECF No. 165-3 § 2.14.) But as ATX points out, that provision is a catchall provision that applies only to "*other* action[s] taken or omitted to be taken" after a list of enumerated actions, which includes the actions listed above. (ECF No. 165-3 § 2.14 (emphasis added).) Thus, Section 2.14 is irrelevant to defenses based on actions explicitly addressed by a prior provision—here, Section 2.1, which addresses claims related to modifications of the Loan and sale of the Property. *See Aramony v. United Way of Am.*, 254 F.3d 403, 413-14 (2d Cir. 2001) (in a contract, "specific words will limit the meaning of general words" (internal quotation marks and citation omitted)). It is unambiguous that Section 2.1 of the Guaranty is the relevant provision and that it bars the majority of Paul's defenses. And "[i]f the court finds that the contract is not ambiguous," as it does here with the Guaranty, "it should assign the plain and ordinary meaning to each term and interpret the contract without the aid of extrinsic evidence," and "it may then award summary judgment." *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002); *see also Nycal Corp. v. Inoco PLC*, 988 F. Supp.

---

[2] To be sure, two of Paul's defenses—(2) subject matter jurisdiction and (7) standing—cannot fall within the Guaranty's waiver, as they concern this Court's power to hear this action. Those defenses, however, clearly fail on the merits, as discussed below.

296, 298 (S.D.N.Y. 1997) ("Summary judgment on a contract interpretation dispute is clearly permissible when the language of the contract provision in question is unambiguous.").

Paul contends that, based on a decision by a New York court, the doctrine of collateral estoppel supports his contention that Section 2.14 preserves his ability to raise defenses grounded in gross negligence or willful misconduct. (ECF No. 204 at 19.) But that decision addressed Section 2.14 of the Guaranty, which is not the relevant section that this Court discusses. Moreover, that decision merely granted Paul the ability to serve an amended answer "to the extent it asserts affirmative defenses based on fraudulent conduct"; such a decision about Paul's ability to serve an amended pleading does not collaterally estop this Court from making substantive determinations about the merits of such defenses. *ATX Debt Fund 2, LLC v. Paul*, 206 A.D.3d 465, 466 (1st Dep't 2022).[3]

As to the four defenses that Paul raises for the first time in his opposition to ATX's motion for summary judgment—(11) breach of contract, (12) promissory estoppel, (13) gross negligence, and (14) willful misconduct—they are not raised in Paul's answer and are therefore forfeited. In addition to being untimely, these purported defenses, to the extent they are supported by facts, are encompassed by the waiver. The breach of contract and promissory estoppel defenses fall within Section 2.1 of the Guaranty, as both of those defenses rely on Lender's purported failure to grant Paul a third extension of the Loan. The gross negligence and willful misconduct defenses also appear to fall under the waiver. Although Paul's briefing on

---

[3] Paul's only other response to Section 2.1's plain terms is that if that waiver is absolute and unconditional, it is unenforceable when the lender engages in "fraudulent, wrongful and oppressive conduct in order to manufacture a deficiency," as ATX allegedly did so here. (ECF No. 204 at 19.) As the Court explains below, however, Paul cannot succeed on an assertion of fraud premised upon a claim that ATX forced a sale of the Property at a price far below its actual value. The valuation of the Property was conclusively established in decisions by the bankruptcy court and the reviewing district court, and it has become law of the case.

those two defenses is less than clear, those defenses appear to be premised on ATX's alleged "loan to own scheme," which similarly involves claims that fall within the waiver.  (ECF No. 204 at 5.)  As a result, Paul is barred from raising those defenses.

### 2. Merits

Beyond largely being subject to the waiver in the Guaranty, Paul's defenses all fail on the merits, as no rational jury could conclude that the asserted defenses apply in this case.

The four defenses that arguably do not fall under the waiver—(1) lack of personal jurisdiction, (2) lack of subject matter jurisdiction, (6) whether ATX owns the Loan, and (7) lack of standing—plainly fail on their merits.  On (1) lack of personal jurisdiction, Paul explicitly abandoned that defense (ECF No. 204 at 16 n.7), and "the personal jurisdiction requirement is a waivable right."  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 n.14 (1985).  Even had Paul not abandoned that defense, he explicitly submitted to this Court's jurisdiction in the Guaranty.  (ECF No. 165-3 § 6.3(b).)  On (2) lack of subject matter jurisdiction, the parties were completely diverse and the amount in controversy exceeded $75,000 at the time the action was filed, granting the Court jurisdiction under 28 U.S.C. § 1332.  (*See* ECF No. 26 ¶¶ 1-3.)  Even though ATX stepped into the shoes of Tuebor after Tuebor assigned its interest to ATX, the later substitution of a non-diverse party pursuant to Rule 25(c) does not destroy diversity jurisdiction.  *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 427-28 (1991).  And on (6) whether ATX was assigned the Loan and Guaranty and (7) lack of standing, Paul cannot make a serious argument that ATX is not entitled to bring this action.  While Paul asserts that ATX has "failed to submit admissible proof to support its prima facie case as a holder in due course of the Guaranty in question" (ECF No. 204 at 4), Tuebor "assigned all right, title, and interest under the

13

Loan and the Guaranty to ATX" (Def.'s SOF Opp. ¶ 58), and ATX has introduced evidence of such assignment (*see* ECF No. 165-13).

The four additional defenses Paul belatedly raised in his opposition to ATX's motion for summary judgment—(11) breach of contract, (12) promissory estoppel, (13) gross negligence, and (14) willful misconduct—also fail because Paul forfeited them by neglecting to raise them until in his opposition to ATX's motion for summary judgment. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (affirming district court's refusal to consider a claim that "had never [been] asserted . . . until [the] brief in opposition to the motion for summary judgment"); *see also In re Image Innovations Holdings, Inc.*, 391 B.R. 255, 260 (S.D.N.Y. 2008) ("Affirmative defenses are generally waived if not timely asserted." (citing *Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994))). Thus, even if Paul's new defenses are not barred by the waiver in the Guaranty that he signed, as the Court concluded earlier, the Court declines to consider them. Moreover, even if the gross negligence and willful misconduct defenses did not fall within the waiver, they would fail on the merits, as Paul has not adduced any facts showing that ATX owed a duty to Paul outside the Guaranty, or that ATX evinced a reckless disregard or conscious indifference to the rights of others—both of which are necessary for those defenses. *See Pasternack v. Lab'y Corp. of Am.*, 892 F. Supp. 2d 540, 547 (S.D.N.Y. 2012); *Taylor Precision Prods., Inc. v. Larimer Grp., Inc.*, No. 15-CV-4428, 2018 WL 4278286, at *18 (S.D.N.Y. Mar. 26, 2018).

Paul's remaining defenses also fail on the merits. On (3) accord and satisfaction and (10) failure to mitigate damages, both of those defenses are premised on ATX's alleged improper decision to "decline[] a settlement offer from the Borrowers" and ATX's alleged improper behavior in "rigging" the foreclosure sale that resulted in the Property being sold for less than it

14

was worth. (ECF No. 49 ¶¶ 90, 97; ECF No. 204 at 2, 12-13.) As an initial matter, Paul has forfeited any defense based on (3) accord and satisfaction by failing to mention that defense anywhere in his opposition to the motion for summary judgment, despite ATX's briefing of it in its motion for summary judgment. (*See* ECF No. 162 at 13, 19-20.) More importantly, even if ATX received certain settlement offers, ATX "was not required to accept the breaching party's offer"—here, an offer from Borrower—and a "breach victim is rarely required to accept a new offer in order to mitigate damages." *SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*, __ F. Supp. 3d __, 2023 WL 7151717, at *15 (S.D.N.Y. 2023) (internal quotation marks and citation omitted). That is especially so when, as Paul puts it himself, that rejected offer required "refinancing by a substitute lender" (ECF No. 49 ¶ 90), as the duty to mitigate damages requires only "reasonable effort" and does not require a plaintiff to incur "undue risk, burden, or expense," *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 441 (S.D.N.Y. 2010).

Defenses based on claims about the rigged foreclosure sale must also dismissed due to the law of the case doctrine, which "commands that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (internal quotation marks and citation omitted). Here, Paul's claims about the "rigged" foreclosure sale all amount to a complaint that the Property sold for far less than what it was worth. But as this Court explained in its prior opinion, "[t]wo federal courts—one bankruptcy court and one district court sitting in review—have examined the issue of valuation and determined that the Property was not worth more than $53 million," which was the value of ATX's bid, and those determinations are binding. *ATX 1*, 2023 WL 2585714, at *6 (ECF No.

15

110 at 11-12).  Thus, to the extent that Paul's defenses of accord and satisfaction and failure to mitigate damages (and any other defenses) are based on the Property's selling for less than its actual worth, those defenses are barred by law of the case.

With respect to (4) unclean hands, (5) equitable estoppel, and (8) fraud, Paul has not pointed to any conduct by ATX that could plausibly support those defenses.  To begin, Paul's affirmative defense of fraud again relies on claims that this Court has already rejected.  To "raise[] fraud as an affirmative defense," one must prove, among other elements, a misrepresentation that "was made . . . to [one's] injury."  *Swig Weiler and Arnow Mgmt., Inc. v. Stahl*, 817 F. Supp. 404, 407 (S.D.N.Y. 1993); *see also State St. Global Advisors Tr. Co. v. Visbal*, 462 F. Supp. 3d 435, 440 (S.D.N.Y. 2020) (explaining that "[t]o plead fraudulent inducement as an affirmative defense, a party must allege . . . resulting damages" from material misrepresentations (internal quotation marks and citation omitted)).[4]  Here, although Paul's allegations are, at times, difficult to understand, the crux of his fraud claim against ATX is that it ran a "loan to own scheme" in which it "ma[d]e fraudulent representations to the bankruptcy court in Texas regarding the value of the property" and then ran a "rigged" foreclosure sale.  (ECF No. 204 at 1, 3, 10-11.)  Paul cannot show that there were any resulting damages from those alleged misrepresentations, however, because it is law of the case that the Property was not worth more than $53 million.  Paul insists that the law of the case doctrine should not apply because there is "new evidence," but that evidence largely revolves around a claim that ATX internally valued the Property at much more than $53 million.  (ECF No. 204 at 14-16.)  ATX's subjective views of the Property's value do not constitute a "cogent or compelling reason[]" to

---

[4] "The elements of fraudulent inducement are substantially the same as those for common law fraud." *VoiceAge Corp. v. RealNetworks, Inc.*, 926 F. Supp. 2d 524, 531 n.3 (S.D.N.Y. 2013).

16

upend the bankruptcy court's (and subsequently, a federal district court's) conclusions on a full evidentiary record. *Johnson*, 564 F.3d at 109 (internal quotation marks and citation omitted).

Similarly, Paul asserts that ATX has "unclean hands" because of new evidence that ATX "had rigged the system in advance to take the Property 'under market value,'" but that claim cannot succeed, again, given the established fact that the Property was not more than $53 million. (ECF No. 204 at 16.) As for Paul's defense of equitable estoppel, it is unclear what conduct that defense is based on, as Paul fails to mention that defense anywhere in his opposition to the motion for summary judgment despite ATX's briefing of the defense, arguably rendering it forfeited. (*See* ECF No. 162 at 13, 18-19.) But assuming it is based on the same conduct that the fraud and unclean hands defenses are based on it, that defense, too, fails.

Finally, on (9) breach of implied covenant and duty of good faith and fair dealing, Paul bases that defense on Lender's refusal to grant a third extension of the Loan maturity date. (ECF No. 204 at 10-11.) But Tuebor was the relevant Lender at the time negotiations regarding a third extension were ongoing (*see* Def.'s SOF Opp. ¶ 58), and Paul does not explain why ATX owed Paul any duty with respect to the extension, or why Tuebor's conduct should be attributed to ATX, which is now the Plaintiff. (*See* ECF No. 223 at 8-9 & nn. 9-10.) As a result, that defense fails as well.

  C. **Additional Discovery**

Paul finally contends that summary judgment should not be granted until there is additional discovery from Lender and its agents. (ECF No. 204 at 21-23.) Fact discovery has been closed since April 28, 2023, however, and beyond generalized speculation, Paul does not identify with any specificity what he expects additional discovery to uncover and how that will change the Court's decision. (*See* ECF No. 105; ECF No. 204 at 23.) Moreover, "[i]n the

Second Circuit, a party opposing a motion for summary judgment on the basis of inadequate discovery 'must file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts the affiant has made to obtain them; and (4) why the affiant's efforts were unsuccessful.'" *Sylvester v. Interbay Funding LLC*, No. 15-CV-1736, 2017 WL 4382056, at *7 (S.D.N.Y. Sept. 29, 2017) (quoting *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004)).  Paul has not made the required showing to justify denying ATX's motion for summary judgment due to inadequate discovery, and the Court declines to reopen fact discovery.

## IV.     Conclusion

For the foregoing reasons, Plaintiff ATX's motion for summary judgment is GRANTED.

ATX shall, on or before February 12, 2024, file a supplemental letter or declaration, with a proposed judgment and appropriate documentation, specifying the amount of damages that ATX is to be awarded under the Guaranty.  Paul shall file any response within 14 days after that filing.

The Clerk of Court is directed to close the motion at Docket Number 161.

SO ORDERED.

Dated: January 29, 2024
       New York, New York

_____
J. PAUL OETKEN
United States District Judge