UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ATX DEBT FUND 1, LLC,

                Plaintiff,

-v-

NATIN PAUL,

                Defendant.

19-CV-8540 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Plaintiff ATX Debt Fund 1, LLC ("ATX") brought this action against Defendant Natin Paul ("Paul") for breach of a loan guaranty. The Court granted summary judgment in favor of ATX and directed ATX to file a proposed judgment specifying the amount of damages that ATX is to be awarded under the guaranty.

Before the Court are Paul's motion for reconsideration of the summary judgment decision, as well as ATX's request for the entry of judgment against Paul. For the reasons that follow, Paul's motion for reconsideration is denied and ATX is directed to file another proposed judgment that is consistent with this opinion and order.

**I.      Discussion**

The Court assumes familiarity with the facts and procedural history of this case. *See ATX Debt Fund 1, LLC v. Paul*, No. 19-CV-8540, 2024 WL 324780 (S.D.N.Y. Jan 29, 2024) ("*ATX II*") (ECF No. 231) (granting summary judgment to ATX); *ATX Debt Fund 1, LLC v. Paul*, No. 19-CV-8540, 2023 WL 6554363 (S.D.N.Y. Aug. 4, 2023) (ECF No. 221) (denying Paul's motion for reconsideration of the denial of the motion for reconsideration and his motion to certify an interlocutory appeal); *ATX Debt Fund 1, LLC v. Paul*, No. 19-CV-8540, 2023 WL 4238910 (S.D.N.Y. June 28, 2023) (ECF No. 199) (denying motion for reconsideration of

1

dismissal of the counterclaims brought by Paul); *ATX Debt Fund 1, LLC v. Paul*, No. 19-CV-8540, 2023 WL 2585714 (S.D.N.Y. Mar. 21, 2023) ("*ATX I*") (ECF No. 110) (dismissing Paul's counterclaims).

### A. Motion for Reconsideration

Paul brings his motion under Local Rule 6.3 of this Court and Federal Rule of Civil Procedure 60(b)(2) and 60(b)(6). (*See* ECF No. 239 at 1.) ATX first contends that Paul's motion for reconsideration is untimely: Local Rule 6.3 requires a motion for reconsideration to be filed "within fourteen (14) days after the entry of the Court's determination of the original motion," but Paul filed his motion twenty-three days after the Court's opinion and order issued. (*See* ECF No. 253 at 9-10.) Still, the Court proceeds to evaluate Paul's motion under Rule 60, as the timeliness requirement in Local Rule 6.3 does not apply if another "statute or rule" provides otherwise. Local Civ. R. 6.3. Under Rule 60, a motion need only "be made within a reasonable time," and in certain circumstances, "no more than a year after the entry of the judgment or order." Fed. R. Civ. P. 60(c)(1).

To be sure, ATX is correct that the "prevailing rule in this Circuit and elsewhere is that an order is final for purposes of Rule 60(b) when it is appealable," *Ferring B.V. v. Serenity Pharms., LLC*, No. 17-CV-9922, 2019 WL 7283272, at *4 (S.D.N.Y. Dec. 27, 2019) (internal quotation marks and citation omitted), and "[a]n order granting summary judgment on the issue of liability, but requiring a calculation of damages, is not an appealable final order," *Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102, 110 (2d Cir. 2014) (internal quotation marks and citation omitted). But upon entry of an award of damages to ATX, the Court's summary judgment opinion would become final and subject to a motion for reconsideration.

The Court therefore exercises its discretion to entertain Paul's motion at this stage and make clear that Paul does not meet the standard for relief under Rule 60(b). *See Hassan v. Fordham Univ.*, 533 F. Supp. 3d 164, 167 (S.D.N.Y. 2021) ("[A] district court also possesses the inherent authority to *sua sponte* reconsider its own interlocutory orders before they become final." (internal quotation marks and citation omitted)). "The decision whether to grant a motion for reconsideration under Local Rule 6.3 . . . or a motion under Rule 60(b) lies in the sound discretion of the district court." *Farez-Espinoza v. Napolitano*, No. 08-CV-11060, 2009 WL 1118098, at *3 (S.D.N.Y. Apr. 27, 2009) (citing *Bennett v. Watson Wyatt & Co.*, 156 F. Supp. 2d 270, 272-73 (S.D.N.Y. 2001)). Rule 60(b) is "a mechanism for extraordinary judicial relief invoked only if the moving party demonstrates exceptional circumstances." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks and citation omitted). Such relief is "generally not favored and is properly granted only upon a showing of exceptional circumstances." *U.S. v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). The circumstances that Paul invokes here are the alleged existence of "(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)," as well as the existence of "(6) any other reason that justifies relief." Fed. R. Civ. P. 60(b)(2), (6). Because neither situation applies here, the Court denies Paul's motion for reconsideration.

       **1.**     **Newly Discovered Evidence**

A party seeking relief from a judgment under Rule 60(b)(2) "has an onerous standard to meet," and must show that "(1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it

probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching." *Teamsters*, 247 F.3d at 392 (internal quotation marks and citation omitted).

To begin, "[e]vidence is not 'newly discovered' if it was in the moving party's possession prior to the entry of judgment." *Johnson v. Askin Cap. Mgmt., L.P.*, 202 F.R.D. 112, 114 (S.D.N.Y. 2001); *see also* 11 Charles Alan Wright et al., Federal Practice and Procedure § 2859 (3d ed. 2023) ("[I]f [the evidence] was in the possession of the party before the judgment was rendered it is not newly discovered and does not entitle the party to relief."); *LaSalle Bank Nat'l Assoc. v. Capco Am. Securitization Corp.*, No. 02-CV-9916, 2006 WL 177169, at *2 (S.D.N.Y. Jan. 25, 2006). ATX explains that Paul has been in possession of the allegedly new evidence since November 30, 2023—two months before the Court issued its summary judgment opinion—if not much earlier. (*See* ECF No. 253 at 15-16.) Paul does not appear to contest that characterization, and his only response is that the Court should still grant relief from the judgment because ATX intentionally delayed the production of the relevant evidence. (*See* ECF No. 257 at 8-9.) But if Paul possessed the relevant information before the date of the summary judgment decision, regardless of ATX's behavior, Paul has not met the "onerous standard" for relief. *Teamsters*, 247 F.3d at 392.

Moreover, even if Paul could not have discovered the evidence before the decision was rendered, the Court declines to grant relief because any allegedly new evidence is not "of such importance that it probably would have changed the outcome." *Id.* First, as the Court explained in its summary judgment opinion and order, Paul largely waived his ability to raise defenses by signing a broad waiver in the Guaranty. *See ATX II*, 2024 WL 324780, at *5-6 (ECF No. 231 at 10-13.) Thus, even if the evidence Paul cites is truly new, all of it appears to pertain to defenses covered by the waiver.

Finally, the Court already rejected arguments relating to Tuebor-Ladder's and ATX's allegedly unlawful conduct, such as inducing Paul not to proceed with refinancing, purchasing the property at below-market value, engaging in an unlawful "loan-to-own" scheme, and conducting a flawed auction. For example, the Court explained that Paul cannot show any damages from the allegedly fraudulent scheme, as it is law of the case that the Property was not worth more than $53 million. *Id.* at *8 (ECF No. 231 at 16-17). The Court also explained that any "new evidence" about the fact that ATX internally valued the Property at more than $53 million does not justify ignoring the bankruptcy court's and a federal district court's conclusions, based on a full evidentiary record, about the value of the Property. *Id.* And the Court explained that ATX was not obligated to accept just any offer to purchase the Property. *Id.* at *7 (ECF No. 231 at 15).*

### 2. Controlling Law

Paul also contends that the Court overlooked controlling law. But his position is "based on legal error alone," which is "inadequate" for relief under Rule 60(b), as that rule "may not be used as a substitute for appeal." *United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (internal quotation marks and citation omitted). Thus, "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

---

* ATX also suggests that any new evidence pertains to defenses that Paul is barred from relitigating due to the effects of *res judicata* and collateral estoppel from other related proceedings, such as a Texas state court's decision dismissing claims by Paul's companies that are identical to Paul's defenses in this case and a New York state court's decision dismissing similar counterclaims and affirmative defenses. (*See* ECF No. 253 at 19-24.) Although the Court did not rely on those proceedings in its original opinion, they suggest an additional reason why Paul cannot receive relief from the judgment.

Paul first submits that the Court overlooked controlling law regarding contract interpretation in determining the scope of the waiver, but Paul simply quibbles with the Court's reading of the contract.  Paul next contests the Court's conclusion that a New York court's decision to allow him to file an amended answer has no preclusive effect here, but that argument again simply represents a disagreement with the Court's determination of how the doctrine of estoppel applies in this case.  Paul then objects to the Court's determination that he waived any fraud-based defenses, but the Court's rejection of such defenses did not depend upon the waiver alone—as the Court explained, Paul cannot succeed on such claims because they would require relitigation of the valuation of the Property, which is subject to the law of the case doctrine.  *ATX II*, 2024 WL 324780, at *6 n.3 (ECF No. 231 at 12 n.3).

For similar reasons, the Court did not err by accepting the $53 million valuation of the Property as law of the case, even though the foreclosure sale happened a few months after that valuation.  As the Court explained in a prior opinion (of which Paul also unsuccessfully sought reconsideration), Paul has not sufficiently alleged factual changes in the intervening months to upend a conclusion by a bankruptcy court and a federal district court about the Property's value, and the "familiar and general rule" of preclusion "applies and disposes of" Paul's arguments.  *ATX I*, 2023 WL 2585714, at *6-7 (ECF No. 110 at 12-14).

Finally, the Court also did not overlook controlling law regarding successor liability, as Paul never raised such an argument, and a "motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court."  *Bennett*, 156 F. Supp. 2d at 271.  Moreover, even if Paul's allegations about Tuebor's conduct had any grounding in fact, the Court explained that such a defense is covered by the waiver.  *ATX II*, 2024 WL 324780, at *5-6 (ECF No. 231 at 10-12).

In sum, Paul does not identify any controlling precedent that the Court overlooked in its original summary judgment opinion and order. Because Paul instead seeks to relitigate issues that have already been decided, the Court denies his motion for reconsideration.

**B.     ATX's Proposed Judgment**

In the Court's summary judgment opinion and order, the Court directed ATX to file a proposed judgment specifying the amount of damages that ATX is to be awarded under the Guaranty. *Id.* at *8 (ECF No. 231 at 18). ATX filed a proposed judgment with supporting materials (*see* ECF Nos. 232-236), and pursuant to a Court order (*see* ECF No. 246), ATX also provided the Court with time entries related to the legal services rendered by Gibson Dunn & Crutcher LLP ("Gibson Dunn") and Polsinelli PC ("Polsinelli") for *in camera* review. Paul filed an opposition to ATX's proposed judgment (ECF No. 244), and ATX filed a reply in support of its proposed judgment (ECF No. 248).

After reviewing the parties' submissions and ATX's *in camera* submissions, the Court generally agrees with ATX on the categories of damages that it is due, except the Court orders a 10% cut of Gibson Dunn's hourly rates and disagrees with ATX that the Guaranty supports a 5% late fee penalty on attorney's fees. Accordingly, the Court directs ATX to submit a new proposed judgment consistent with its discussion below.

**1.     Value of the Property**

Paul's first objection to the award of damages sounds in the same vein as a contention the Court has already rejected—that ATX has not demonstrated the actual fair and reasonable market value of the property as of the date of the auction, which is one of the inputs into ATX's damages calculation. (ECF No. 244 at 2-6.) But as the Court explained earlier, and in a previous opinion, *see ATX I*, 2023 WL 2585714, at *6-7 (ECF No. 110 at 12-14), Paul has not made

sufficient allegations to overcome the conclusion that $53 million is an appropriate valuation of the property for purposes of this case (and relatedly, for purposes of calculating ATX's damages). Accordingly, the Court declines to disturb that valuation.

### 2. Attorney's Fees

To begin, the Court rejects Paul's contention that collateral estoppel and *res judicata* bar ATX's recovery of attorney's fees. Paul invokes a Texas action in contending that collateral estoppel bars such recovery. But while ATX referred to the amount expended in attorney's fees in justifying the amount it was requesting, its motion was ultimately one for sanctions. (*See* ECF No. 249-4.) The Texas court's decision was simply a denial of ATX's motion for sanctions, and it therefore has no preclusive effect here. (*See* ECF No. 241-28.) Paul then argues that *res judicata* bars recovery of attorney's fees, as ATX could have litigated attorney's fees in the Texas action. (ECF No. 244 at 7-9.) But under Texas law, *res judicata* "applies only to the cause of action actually filed by the plaintiff and not to cross-actions which might have been filed by defendant," unless the claim is a "compulsory counterclaim." *Lesbrookton, Inc. v. Jackson*, 796 S.W.2d 276, 281 (Tex. App. 1990). Here, ATX's claim to recover a deficiency judgment (upon which its claim for attorney's fees is based) was not a compulsory counterclaim in the Texas action, meaning *res judicata* does not help Paul in this case. *See Douglas v. NCNB Tex. Nat'l Bank*, 979 F.2d 1128, 1130 (5th Cir. 1992).

The Court also rejects Paul's contention that Gibson Dunn and Polsinelli have provided insufficient information for the Court to determine the appropriate amount of fees. (*See* ECF No. 244 at 11-17.) Gibson Dunn and Polsinelli provided declarations that included details about the motions and other legal work that their attorneys performed, details on the hourly rates charged by the attorneys, and monthly invoices. (*See* ECF Nos. 233, 236.) Moreover, pursuant to an

order issued by this Court, both firms provided the Court with detailed time entries and descriptions for *in camera* review, and "courts often review invoices and billing records *in camera* when calculating awards of attorneys' fees and costs." *Major League Baseball Props., Inc. v. Corporacion de Television y Microonda Rafa, S.A.*, No. 19-CV-8669, 2020 WL 5518361, at *4 (S.D.N.Y. Sept. 14, 2020) (collecting cases). Here, ATX represents that ATX and Paul are competitors and ongoing litigation adversaries, and that Paul has previously filed confidential information on public dockets, justifying the Court's review of more detailed time and expense records *in camera*. (ECF No. 248 at 7.)

Based on the materials before it, the Court concludes that the attorney's fees and costs ATX seeks are generally reasonable, although the Court subjects Gibson Dunn's hourly rates to a 10% cut across the board. As Paul himself acknowledges, the district court has "considerable discretion in determining what constitutes reasonable attorney's fees in a given case," due to the district court's "superior understanding of the litigation." *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008) (internal quotation marks and citation omitted). The lodestar, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," creates a "presumptively reasonable fee." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal quotation marks and citation omitted). In determining an award of attorney's fees, district courts "should not[] become green-eyeshade accountants," as the "essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). And in doing so, district courts may "take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

The Court concludes that with a 10% cut across the board for Gibson Dunn's rates, the requested hourly rates are reasonable.  In determining the reasonableness of an hourly rate, district courts should consider factors such as the time and labor required, the level of skill required to perform the legal service properly, the attorney's customary hourly rate, the amount involved in the case, and the results obtained, among other factors.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008).  Gibson Dunn's requested rates range from $335 per hour to $350 per hour for research employees, $595 per hour to $685 per hour for senior paralegals, $775 per hour to $1,265 per hour for associates, and $1,535 to $1,975 for partners.  (ECF No. 233 ¶ 9.)  Polsinelli's hourly rates ranged from $125 per hour to $280 per hour for paralegals and from $420 per hour to $820 per hour for attorneys.  (ECF No. 236 ¶¶ 6-12.)

The relevant factors largely weigh in ATX's favor here.  Paul drove up the cost and complexity of litigation by repeatedly litigating already-rejected counterclaims and affirmative defenses, many of which were meritless, through multiple rounds of motions.  ATX also prevailed at nearly every stage of the litigation, thus achieving a significant degree of success, which the Second Circuit has described as the "most important factor in determining a reasonable fee," *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 760 (2d Cir. 1998), as the Court dismissed Paul's counterclaims, denied multiple motions for reconsideration filed by Paul, and awarded ATX summary judgment.  Both firms also represent that the rates they claim are the rates that the firms regularly charge to paying clients.  (*See* ECF No. 233 ¶ 7; ECF No. 236 ¶ 13.)

Still, although one court in our Circuit observed nearly a decade ago that "partner billing rates in excess of $1,000 an hour" are "not uncommon in the context of complex commercial litigation," *Themis Cap. v. Dem. Rep. Congo*, No. 09-CV-1652 (PAE), 2014 WL 4379100, at *7

(S.D.N.Y. Sept. 4, 2014), Gibson Dunn's hourly rates appear to be relatively high. Accordingly, while the Court approves Polsinelli's rates, it subjects Gibson Dunn's rates to a 10% cut across the board. After that adjustment, the hourly rates billed in this case are on par with rates approved in similar cases. *See, e.g.*, *Red Tree Invs., LLC v. Petroleos de Venezuela, S.A.*, No. 19-CV-2523, 2022 WL 17834945, at *2 (S.D.N.Y. Nov. 29, 2022), *report and recommendation adopted*, 2023 WL 3004883 (S.D.N.Y. Feb. 23, 2023) (approving a 2021 hourly rate of $1,600 for a senior partner); *id.* ECF No. 151-7 at 17 (identifying $1,600 rate for senior partner); *Vista Outdoor Inc. v. Reeves Family Tr.*, No. 16-CV-5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (approving hourly rates of $1,260 in 2018, $1,195 in 2017, and $1,170 in 2016 for Gibson Dunn partners); *Wells Fargo Trust Co., N.A. v. Fast Colombia S.A.S.*, No. 23-CV-603, 2023 WL 8591953, at *6, 9 (S.D.N.Y. Oct. 16, 2023), *report and recommendation adopted*, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023) (approving hourly rates up to $1,400 for a partner and nearly $1,000 for associates).

As to the number of hours, upon reviewing counsel's submissions *in camera*, the Court also concludes that the hours spent by Gibson Dunn and Polsinelli were reasonable and not duplicative. As explained above, what might have otherwise been a relatively simple case to enforce a guaranty has spanned almost five years, largely due to litigation tactics by Paul. Given such protracted litigation, the number of hours expended by counsel was reasonable. Moreover, the Court agrees with ATX that all of its requested attorney's fees are recoverable. Under Section 1.8 of the Guaranty, "Guarantor shall . . . pay Lender all costs and expenses (including court costs and reasonable attorneys' fees) incurred by Lender in the enforcement hereof or the preservation of Lender's rights hereunder, together with interest thereon at the Default Rate from the date requested by Lender until the date of payment to Lender." (ECF No. 165-3 § 1.8.)

11

While Paul objects that some of ATX's work was to respond to the Third-Party Complaint and various other actions such as bankruptcy proceedings, all those actions were part of Paul's campaign to challenge ATX's rights under the Guaranty, and fees incurred in those actions are recoverable under the Guaranty's language. *See, e.g.*, *Faunus Grp. Int'l, Inc. v. Ramsoondar*, No. 13-CV-6927, 2015 WL 5440676, at *5 (S.D.N.Y. Sept. 8, 2015) (rejecting assertion that a plaintiff cannot recover legal fees from other actions where "the Guaranty explicitly provides [the plaintiff] with a right to recover legal fees expended not only in connection with enforcing its rights under the Sales Agreement and Guaranty, but also with 'protecting' and 'preserving' those same rights").

The Court agrees with Paul, however, that ATX is not entitled to a 5% late fee on attorney's fees. The late payment provision in the Loan Agreement states that a 5% late fee is due if "any regularly scheduled monthly payments of principal, interest or any other sum due under the Loan Documents . . . is not paid by Borrower on the date on which it is due." (ECF No. 165-1 § 2.3.3.) That provision does not appear to apply to attorney's fees ordered in the first instance, as there is no "date on which [such fees are] due" (at least not at this juncture). As a result, ATX is not entitled to recover a 5% late fee on the attorney's fees.

## II.   Conclusion

For the foregoing reasons, Defendant Paul's motion for reconsideration is DENIED.

The Court directs Plaintiff ATX to file a revised proposed judgment on the docket within fourteen days that is consistent with the Court's opinion and order—specifically, accounting for a 10% reduction in Gibson Dunn's hourly rates and removing the 5% late fee on attorney's fees. Plaintiff ATX is also directed to file documentation supporting its request for attorney's fees and costs on the docket that includes, from each Gibson Dunn and Polsinelli, a total amount of attorney's fees and costs requested, as well as a breakdown of those amounts by month.

The Clerk of Court is directed to close the motion at ECF Number 237.

SO ORDERED.

Dated: May 9, 2024
       New York, New York

                                                          J. PAUL OETKEN
                                                United States District Judge